DAVID BILSKER (Bar No. 152383)
davidbilsker@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone:     (415) 875-6600
Facsimile:     (415) 875-6700

JOSEPH MILOWIC III (*pro hac vice forthcoming*)
josephmilowic@quinnemanuel.com
LUCAS BENTO (*pro hac vice forthcoming*)
lucasbento@quinnemanuel.com
COLIN STEELE (*pro hac vice forthcoming*)
colinsteele@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, NY  10010
Telephone:     (212) 849-7000
Facsimile:     (212) 849-7100

*Attorneys for Petitioners*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF LATVIA MGI TECH SIA ET AL FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ <br><br> **MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782** |

# TABLE OF CONTENTS

|   |   |   | Page |
|---|---|---|---|
| I. | INTRODUCTION | | 1 |
| II. | FACTUAL BACKGROUND | | 3 |
| | A. | The Parties | 3 |
| | B. | Technology And Patents At Issue | 4 |
| | C. | The Foreign Proceedings | 5 |
| | | 1. *The German Proceedings* | 5 |
| | | (a) Infringement Proceeding | 5 |
| | | (b) Nullity Proceeding | 5 |
| | | (c) Preliminary Injunction Proceeding | 6 |
| | | 2. *The Danish Proceeding* | 6 |
| | | 3. *The Swiss Proceedings* | 7 |
| | | 4. *The Turkish Proceeding* | 8 |
| | | 5. *The UK Proceeding* | 9 |
| | | 6. *The Finnish Proceeding* | 9 |
| | | 7. *The Swedish Proceedings* | 10 |
| | | 8. *The French Proceeding* | 10 |
| | | 9. *The Belgian Proceedings* | 10 |
| | | 10. *The Spanish Proceeding* | 11 |
| | | 11. *The Hong Kong Proceeding* | 11 |
| | D. | U.S. Procedural Background | 12 |
| | | 1. *Adversarial Proceedings* | 12 |
| | | 2. *Illumina Cambridge's Section 1782 Application* | 13 |
| | E. | Discovery Sought In This 1782 Application | 13 |
| III. | ARGUMENT | | 16 |
| | A. | Legal Framework | 16 |
| | B. | Petitioners Satisfy The Three Statutory Requirements of Section 1782 | 18 |

iii

1.   *Respondent is "found" in the Northern District of California.* ..................18

2.   *The discovery sought is for use in foreign proceedings.* ..............................18

3.   *Petitioners are "Interested Persons."* ...............................................20

C.   All of the Discretionary Factors Under Section 1782 Weigh In Favor Of
Permitting The Discovery Petitioners Seek. ...............................................21

1.   *The first Intel factor favors granting discovery.* ..........................................21

2.   *The second Intel factor favors granting discovery.* .....................................22

3.   *The third Intel factor favors granting discovery.* .......................................23

4.   *The fourth Intel factor favors granting discovery.* .......................................25

IV.   CONCLUSION ...........................................................................................25

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782**

# TABLE OF AUTHORITIES

## Cases

*AIS GmbHAachen Innovative Sols. v. Thoratec LLC*,
   762 F. App'x 447 (9th Cir. 2019) ........................................................................... 21

*Akebia Therapeutics, Inc. v. FibroGen, Inc.*,
   793 F.3d 1108 (9th Cir. 2015) ........................................................................ 21, 22

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ......................................................................................... 20

*Illumina Cambridge Ltd v. Complete Genomics, Inc.*,
   2020 WL 1694353 (N.D. Cal. Apr. 7, 2020) .................................................... 24, 26

*Illumina Cambridge Ltd. v. Complete Genomics, Inc.*,
   2020 WL 820327 (N.D. Cal. Feb. 19, 2020) ......................................................... 21

*In re Apple Retail UK Ltd.*,
   2020 WL 3833392 (N.D. Cal. July 8, 2020) ......................................................... 21

*In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*,
   121 F.3d 77 (2d Cir. 1997) ....................................................................................... 26

*In re Application of HydroDive Nigeria, Ltd.*,
   2013 WL 12155021 (S.D. Tex. May 29, 2013) .................................................... 22

*In re Application of JSC Raiffeisenbank*,
   2016 WL 6474224 (N .D. Cal. Nov. 2, 2016) ....................................................... 25

*In re Bayerische Motoren Werke AG*,
   2019 WL 5963234 (N.D. Cal. Nov. 13, 2019) ...................................................... 21

*In re Ex Parte Apple Inc.*,
   2015 WL 5838606 (S.D. Cal. Oct. 7, 2015) ......................................................... 26

*In re Ex Parte Application of Ambercroft Trading Ltd.*,
   2018 WL 2867744 (N.D. Cal. June 11, 2018)...................................................... 27

*In re Ex Parte Application of Jommi*,
   2013 WL6058201 (N.D. Cal. Nov. 15, 2013) ...................................................... 21

*In re Ex Parte Application of Smith*,
   2012 WL 12885234 (S.D. Cal. Oct. 9, 2012) ....................................................... 26

*In re Ex Parte Application of Societe d'Etude de Realisation et d'Exploitation Pour le
Traitement du Mais*,
   2013 WL 6164435 (E.D. Pa. Nov. 22, 2013) ....................................................... 23

*In re Illumina Cambridge Ltd.*,
  No. 2019 WL 5811467 (N.D. Cal. Nov. 7, 2019) ................................................ 21, 23

*In re Int'l Judicial Assistance*,
  2015 U.S. Dist. LEXIS 81550 (N.D. Cal. June 22, 2015) .................................. 21

*In re IPCom GmbH& Co. KG*,
  2014 WL 12772090 (N.D. Cal. Apr. 10, 2014) .................................................... 24

*In re Letter of Request From Boras Dist. Court, Sweden*,
  153 F.R.D. 31 (E.D.N.Y. 1994) ............................................................................ 21

*In re Mak*,
  2012 WL 2906761 (N.D. Cal. July 16, 2012) ...................................................... 22

*In re Mireskandari*,
  2012 WL 12877390 (S.D. Cal. Dec. 20, 2012) .................................................... 19

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
  634 F.3d 557 (9th Cir. 2011) ................................................................................ 20

*In re Request for Int'l Judicial Assistance from the 16th Family Ct.*,
  2014 WL 1202545 (N.D. Cal. Mar. 19, 2014) .................................................... 20

*In re Request for Int'l Judicial Assistance from the Dist. Ct. of Kolding, Denmark*,
  2015 WL 13827074 (W.D.N.C. May 4, 2015) .................................................... 21

*In re: Ex Parte Application Varian Med. Sys. Int'l AG*,
  2016 WL 1161568 (N.D. Cal. Mar. 24, 2016) ............................................... 22, 25

*Intel Corp. v. Advanced Micro Devices, Inc.*,
  542 U.S. 241 (2004) ...................................................................................... *passim*

*IPCom GmbH v. Apple, Inc.*,
  61 F. Supp. 3d 919 (N.D. Cal. 2014) .................................................................. 21

*London v. Does 1-4*,
  279 F. App'x 513 (9th Cir. 2008) ........................................................................ 19

*Matter of Application of O2CNI Co., Ltd.*,
  2014 WL 689082 (N.D. Cal. Feb. 21, 2014) ...................................................... 23

*Matter of de Leon*,
  2020 WL 1820683 (N.D. Cal. Apr. 10, 2020) .................................................... 27

*Matter of Lufthansa Technick AG*,
  2019 WL 331839 (W.D. Wash. Jan. 25, 2019) .................................................. 21

*Nikon Corp. v. GlobalFoundries U.S., Inc.*,
  2017 WL 4647753 (N.D. Cal. Oct. 16, 2017) .................................................... 24

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782

*Palantir Techs., Inc. v. Abramowitz,*
 415 F. Supp. 3d 907 (N.D. Cal. 2019) ...................................................................... 25

**Statutory Authorities**

28 U.S.C. § 1782 ................................................................................................... *passim*

Petitioners Latvia MGI Tech SIA ("Latvia MGI"), MGI Tech Co., Ltd. ("MGI Tech"), MGI International Sales Co., Ltd ("MGI International"), BGI Complete Genomics Hong Kong Co., Ltd. ("BGI Complete"), BGI-HongKong Co., Limited ("BGI-HongKong"), BGI Tech Solutions (HongKong) Co. ("BGI Tech"), BGI Europe A/S ("BGI Europe"), BGI Health (HK) Company Limited ("BGI Health"), Genoks Teknoloji Saghk Bilisim Turizm Hiz. Endiistriyel Makine Elektrik Elektronik Ithalat Ihracat San. Tic. Ltd. Sti. ("Genoks"), Labema Oy ("Labema"), Comercial Rafer, SL ("Rafer"), and Witec AG ("Witec") (collectively, "Petitioners"), respectfully submit this Memorandum of Law in support of their Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782") for an order authorizing them to obtain discovery from Illumina, Inc. ("Illumina" or "Respondent"), in the form of the attached subpoena *duces tecum* (the "Subpoena") (the "Application").[1]

## I.  INTRODUCTION

This Application arises out of several foreign patent disputes between Petitioners and Illumina Cambridge Ltd ("Illumina Cambridge")[2]—an entity Respondent wholly owns—relating to DNA sequencing—a technology used, inter alia, to sequence DNA.  In a misguided effort to stifle competition, Illumina Cambridge has initiated over a dozen lawsuits around the world (as well as in the United States) claiming that Petitioners infringed its European, English, Hong Kong and Turkish patents.  In support of those foreign claims, Illumina Cambridge has already obtained documentary and testimonial discovery from Petitioners' affiliates in the United States via a Section 1782 proceeding pending before this Court.  In order to oppose Illumina Cambridge's foreign claims, Petitioners now seek targeted discovery from Respondent concerning the patents at issue, discovery which Respondent and its affiliates have *already* produced (or will be producing) in parallel U.S. patent litigation.

Specifically, Petitioners seek evidence relating to existing and future depositions of the individuals who are listed as inventors of the patents at issue in the foreign proceedings (the

---

[1]  The Subpoena is attached as Exhibit 2 to the Declaration of Joseph Milowic III ("Milowic Decl.").
[2]  As noted below, Illumina, Inc. is also a party to one of the foreign proceedings.

"Transcripts[3]") and notebooks that document the work claimed in those patents (the "Notebooks[4]").

Such information, *which has already been produced or which will be produced shortly in parallel U.S. proceedings*, is critical for Petitioners to, inter alia, invalidate and/or nullify those patents and/or secure dismissal of the pending or threatened patent infringement proceedings brought by Illumina Cambridge abroad (the "Foreign Proceedings"). And Respondent has possession, custody and control of the Transcripts and Notebooks, as illustrated by the fact that it has already produced, or will soon produce, them in parallel U.S. proceedings.

This Application meets all of the statutory requirements of Section 1782. Illumina "resides or is found" in this District—as that term is used in Section 1782—because, among other things, it maintains multiple facilities in this district, one in Foster City and one in Hayward. The latter is one of two Illumina facilities that Illumina identifies as being responsible for "manufacturing research and development." And the discovery sought directly relates to the elements of the claims and defenses asserted in each of the Foreign Proceedings. Each of the discretionary factors the Supreme Court announced in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) ("*Intel*") also favors allowing the discovery Petitioners seek: Illumina is not a party to any of the Foreign Proceedings save one, and the information requested here could not be obtained in any of those Proceedings absent this Court's aid; the foreign tribunals would be receptive to the aid sought here; the discovery here does not seek to avoid any foreign restriction on gathering evidence; and the requests are carefully circumscribed to avoid any undue burden as they request *only* information that Respondent has already produced (or will produce) in parallel U.S. proceedings.

Petitioners therefore respectfully request that the Court grant their Application and permit them to serve the Subpoena on Illumina.[5]

---

[3] This term is fully defined in the accompanying Subpoena attached as Exhibit 2 to the Milowic Declaration.
[4] This term is fully defined in the accompanying Subpoena attached as Exhibit 2 to the Milowic Declaration.
[5] Equitable considerations also weigh in favor of granting the application, as doing otherwise would create an unjust information asymmetry between the two sides in the Foreign Proceedings, wherein Illumina and its subsidiaries are free to seek discovery from BGI and its affiliates in the U.S. under Section 1782, but BGI cannot seek such discovery from Illumina.

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782**

## II. FACTUAL BACKGROUND

### A. The Parties

*Petitioners*. As listed below, Petitioners are subsidiaries, affiliates, and/or distributors of the BGI Group, one of the world's leading genome sequencing companies. BGI Group is headquartered in Shenzhen, Guangdong, China.[6] Petitioners are litigants (or putative litigants)[7] in the Foreign Proceedings (defined *infra*).

    a. *Latvia MGI Tech SIA* is a company incorporated in Republic of Latvia with headquarters in Riga, Latvia. Ridgway Decl. ¶15. Latvia MGI is a fully owned subsidiary of BGI Complete Genomic Hong Kong Co. LTD. *Id.*.

    b. *MGI Tech Co., LTD* is a company incorporated in the People's Republic of China with headquarters in Shenzhen, China. *Id.*

    c. *MGI International Sales Co., LTD* is a company incorporated in the Hong Kong Special Administrative Region of the People's Republic of China with headquarters in Hong Kong. *Id.*. MGI International is a fully owned subsidiary of CGI Hong Kong Co., Limited. *Id.*

    d. *BGI Complete Genomics Hong Kong Co. LTD* is a company incorporated in Hong Kong Special Administrative Region of the People's Republic of China with headquarters in Hong Kong. *Id.*. BGI Complete Genomics Hong Kong Co. LTD is a fully owned subsidiary of Complete Genomics Inc. *Id.*. *BGI-HongKong Co., Limited* is a company incorporated in Hong Kong SAR with headquarters in Hong Kong. Lo Decl. ¶1. *BGI Tech Solutions (HongKong) Co.*, Limited is a company incorporated in Hong Kong SAR with headquarters in Hong Kong. *Id. BGI Health (HK) Company Limited* is a company incorporated in Hong Kong SAR with headquarters in Hong Kong. *Id.*

    e. *BGI Europe* is a company incorporated in Denmark with headquarters in Copenhagen, Denmark. Declaration of Nikolaj Bording ("Bording Decl.") ¶4, n.1.

---

[6] Milowic Decl., ¶ 6, Ex. 3.
[7] For example, Illumina Cambridge has notified Petitioners that it intends to bring additional proceedings in Denmark. *See* Milowic Declaration, ¶ 8, Ex. 11.

1     *f.*  *BGI Distributors: Genoks* is a company incorporated in Turkey, and is a distributor of

2     MGI products in Turkey. Declaration of Türkay Alica ("Alica Decl.") ¶¶10-11. *Labema*

3     is a company incorporated in Finland with headquarters in Helsinki, Finland, and is a

4     distributor of MGI products in Finland. Declaration of Panu Siitonen ("Siitonen Decl.")

5     ¶2. *Rafer* is a company incorporated in Spain, and is a distributor of MGI products in

6     Spain. Declaration of Eduardo Castillo ("Castillo Decl.") ¶8. *Witec* is a company

7     incorporated in Switzerland with its registered seat in Sursee, Switzerland and is a

8     distributor of BGI products in Switzerland. Declaration of Thierry Calame ("Calame

9     Decl.") ¶21, n.5.

10    **Illumina Inc.** Illumina is a life science corporation which is incorporated in Delaware and

11 which maintains its US manufacturing, research and development facility in Hayward, CA. Milowic

12 Decl., ¶7, Ex. 5. Illumina Inc. owns 100% of the stock in Illumina Cambridge Ltd ("Illumina

13 Cambridge"). *Id.* ¶7, Ex. 6. Illumina describes itself "[a]s a global company that places high value

14 on collaborative interactions." *Id.* ¶7, Ex. 5. There is, accordingly, a high degree of integration

15 between Illumina and its subsidiaries, for example, Illumina's Senior Vice President & General

16 Manager also sits on the board of Illumina Cambridge. *Id.* ¶7, Exs. 7-10.

17    **B.**    **Technology And Patents At Issue**

18    Deoxyribonucleic acid ("DNA") stores the genetic information of all living organisms.

19 DNA consists of two "strands" or "chains" made up of a succession of nucleotides and coiled around

20 each other to form a double helix.

21    DNA sequencing is the process of determining the nucleotide sequence of the DNA to be

22 analyzed. There are various methods for sequencing DNA, including Sanger sequencing and

23 sequencing-by-synthesis (SBS). The Sanger method creates strands of different sized

24 complementary nucleic acids that are then run on gels to determine the nucleotide sequence. In

25 Cyclic Reversible Termination SBS, which Illumina uses, one nucleotide that contains a 3' OH

26 block is added to a primer annealed to the nucleic acid to be sequenced. The block prevents more

27 than one nucleotide being added. The identity of each incorporated nucleotide is determined by

28

detecting a fluorescent signal. The cycle is then repeated by removing the block, which allows the next nucleotide to be incorporated into the primer.

Illumina Cambridge and Respondents are opponents in patent infringement and invalidity actions pending in Europe and Turkey involving various Illumina Cambridge patents, all of which pertain to DNA sequencing (the "Patents At-Issue").[8]

## C.   The Foreign Proceedings

### 1.   *The German Proceedings*

#### (a)   Infringement Proceeding

On March 29, 2019, Illumina Cambridge filed suit against Latvia MGI in the District Court of Düsseldorf, Germany, asserting infringement of the '578 EP (the "German Infringement Action"). Feldges Decl., ¶¶9, 15. On November 13, 2019, Illumina Cambridge extended the complaint to add MGI Tech as an additional defendant. *Id.* ¶15. Illumina Cambridge alleges that Latvia MGI and MGI Tech infringe the '578 EP by, inter alia, offering and distributing allegedly infringing DNA sequencing machines, as well as kits containing sequencing chemistry. *Id.* ¶16, Ex. D at 11, 27. Both Latvia MGI and MGI Tech have filed answers denying infringement. *Id.* ¶¶18–19. Illumina Cambridge filed a reply on July 27, 2020. *Id.* ¶23. The MGI entities' rejoinder is due on September 8, 2020. *Id.* ¶24. The District Court Düsseldorf has scheduled a hearing for October 13, 2020. *Id.* The Petitioners in this action will have the right to file additional documents and evidence therein until the final hearing.[9]

#### (b)   Nullity Proceeding

On October 15, 2019, Latvia MGI filed a separate nullity action against the German part of the '578 EP with the German Federal Patent Court (the "German Nullity Proceeding"). *Id.* ¶20. Illumina Cambridge replied to the complaint in that action on June 15, 2020. *Id.* ¶25. Latvia MGI

---

[8]  European Patents 1 530 578 (the "'578 EP"), 3 002 289 (the "'289 EP"), 1 828 412 (the "'412 EP"), 2 021 415 (the "'415 EP"), 3 578 433 (the "'433 EP"), and 3363809 B1 (the "'809 EP"); Turkish Patent 2018 04580 (the "'4580 TP"); UK Patent (UK) 1 664 287 B1 (the "'287 EP"); Hong Kong Standard Patent HK1253509 ("HK 509").
[9]  In foreign proceedings pending in Hong Kong Illumina Cambridge also filed a declaration, according to which a further patent infringement action was filed in Germany against BGI as well as MGI International Sales Ltd. through which Illumina asserts infringement of EP 578 as well as of EP '433 ("Second German Infringement Action"). Further, based on the information presently available to Petitioners' German counsel, this further action has not yet been served upon defendants. Feldges Decl. ¶7.

is now due to respond to Illumina Cambridge's submission by September 19, 2020. *Id.* To date no oral hearing has been scheduled in the German Nullity Proceeding. *Id.* The Petitioners involved with the German Nullity Proceeding will have the right to file additional documents and evidence therein until the final hearing. *Id.* ¶40.

(c)    <u>Preliminary Injunction Proceeding</u>

On July 21, 2020 BGI Complete was served with a preliminary injunction order issued by the District Court Düsseldorf (the "<u>German PI Proceeding</u>," and together with the German Infringement Action, the Second German Infringement Action, and German Nullity Proceedings, the "<u>German Proceedings</u>"). *Id.* ¶¶26–28. The order enjoins BGI Complete inter alia from marketing and selling products which allegedly infringe upon the '578 EP in the Federal Republic of Germany. *Id.* ¶26. BGI Complete is in the process of preparing its objection to the preliminary injunction order. *Id.* ¶29. BGI Complete will have the right to file additional documents and evidence in the German PI Proceeding until the final hearing, which has not yet been scheduled. *Id.* ¶40.

**2.** ***The Danish Proceeding***

On May 15, 2019, Illumina and Illumina Cambridge commenced suit against BGI Europe before the Danish Maritime and Commercial High Court, asserting that BGI Europe infringes the Danish part of the '289 EP as well as European trademark rights (the "<u>Danish IP Proceeding</u>"). Bording Decl., ¶11, Ex. A, B. On August 23, 2019, BGI Europe filed its Statement of Defense in the Danish IP Proceeding. *Id.* ¶11, Ex. C, D. BGI Europe also moved to stay the Danish IP Proceeding pending a written decision from the European Patent Office in a related opposition proceeding challenging the validity of the '289 EP. *Id.* ¶11. The Danish Court granted BGI Europe's motion, and so the Danish IP Proceeding is currently stayed pending the issuance of a written decision by the European Patent Office. Bording Decl., ¶11, Ex. E, F.

On June 25, 2020, Counsel for Illumina Cambridge informed counsel for Petitioners' affiliates in the parallel Section 1782 proceeding brought by Illumina Cambridge in the Northern

District of California[10] that Illumina Cambridge plans to initiate additional proceedings against BGI Europe before the Danish Maritime and Commercial Court in Denmark (the "Contemplated Danish Proceeding", and together with the Danish IP Proceeding, the "Danish Proceedings").[11] Petitioner BGI Europe anticipates that the Contemplated Danish Proceeding will involve patent infringement claims, in large part because counsel for Illumina Cambridge has modified the protective order in the parallel Section 1782 action to permit the use of the evidence obtained therein in the Contemplated Danish Proceeding.

BGI Europe will have the opportunity to introduce the evidence obtained pursuant to this Application until the Danish courts deem the preparation of the Danish Proceedings "closed", which usually occurs 4 weeks prior to the oral hearing in a Danish civil action. Bording Decl., ¶25. It will still be possible to file new evidence after the Proceedings are "closed", but the opposing party will be entitled to object to such evidence, and the court may decide to exclude it. *Id.*

### 3. The Swiss Proceedings

On June 28, 2019, Illumina Cambridge commenced suit against Latvia MGI in Switzerland, asserting that certain DNA sequencing reagent kits allegedly offered and distributed by Latvia MGI in Switzerland infringe the Swiss parts of the '578 and '412 EPs (the "Swiss Infringement Proceeding"). Calame Decl., ¶11. Illumina Cambridge seeks injunctive relief and financial compensation. *Id.* Latvia MGI filed its Statement of Defense on November 25, 2019. *Id.* ¶12. In particular, Lavia MGI asserts that the accused products do not make use of all claim features of the '578 and '412 EPs, and that in any case, the EPs are invalid, and so Illumina has not established infringement. *Id.* ¶¶13–15. The technical judge overseeing the Swiss Proceeding will issue an expert opinion by late November 2020, and the parties will thereafter be invited to comment on the expert opinion in written submissions by mid-January 2021. *Id.* ¶19. The court will then hold a final hearing, likely sometime in or after February 2021. *Id.* ¶20.[12]

---

[10]  Milowic Decl., ¶8, Exs. 4, 11.
[11]  *Id.*
[12]  The factual and procedural background of the Swiss Proceedings is set out in full in the Calame Declaration.

On July 30, 2020, Illumina Cambridge announced, through counsel, its intent to initiate additional proceedings against MGI International and Witec in the Federal Patent Court in Switzerland ("Contemplated Swiss Proceeding"). [13] Thereafter, on August 7, 2020 Illumina Cambridge filed a patent infringement action against Witec AG in the Federal Patent Court in Switzerland, asserting infringement of the Swiss parts of the '578 and '412 EPs ("Witec Infringement Proceeding", and together with the Swiss Infringement Proceeding and Contemplated Swiss Proceeding, the "Swiss Proceedings"). Calame Decl., ¶21. Accordingly, Petitioner MGI International anticipates that the contemplated litigation against it will involve patent infringement claims. Evidence obtained via this 1782 Application can be introduced in the Swiss Proceedings until the date of the final hearings therein. *Id.* ¶¶33, 35–38.

### 4. *The Turkish Proceeding*

Illumina Cambridge filed suit against Genoks—BGI Group's distributor in Turkey[14]—on June 28, 2019, asserting that certain DNA sequencing kits Genoks distributes infringe the '4580 TP (the "Turkish Proceeding"). Alica Decl., Ex. 1, 1.a. Genoks was notified of Illumina's complaint on July 09, 2019, and on September 09, 2019 filed a motion denying all infringement claims and objecting to the evidence filed by Illumina Cambridge. *Id.* ¶11. Genoks has also filed a counter invalidity action against the '4580 TP. *Id.* The parties have exchanged several rounds of petitions, and the Turkish court is now beginning to hold hearings. *Id.* ¶¶12-13. On July 10, 2020 Latvia MGI filed a request to intervene in the Turkish Proceeding in support of Genoks pursuant to Article 66 of the Turkish Procedural Code, which allows a party with an interest in a pending litigation to intervene therein. Declaration of Okan Çan ("Çan Decl.") ¶14.

Both Genoks and, assuming its motion to intervene is granted, Latvia MGI are entitled to submit any argument and evidence in support of their claims and defenses in the Turkish Proceeding. *Id.* ¶14; Alica Decl. ¶15.

---

[13] *See* Milowic Decl., Ex. 12; Milowic Decl., Ex. 11 at 3-4.
[14] Genoks' full business name is Genoks Teknoloji Sağlik Bilişim Turizm Hizmetleri Endüstriyel Makine Elektrik Elektronik İthalat İhracat San. Tic. Ltd. Şti. Genoks. Alica Decl., ¶1.

### 5. The UK Proceeding

On November 28, 2019, Illumina Cambridge initiated patent infringement proceedings that are now pending against (i) Latvia MGI, (ii) MGI Tech, (iii) MGI International, and (iv) BGI Complete, claiming that their StandardMPS & CoolMPS product lines infringe the '578, '289, '412, '415, '433, '587, and '287 EPs (the "UK Proceeding"). Ridgway Decl. ¶¶15–16. The Petitioners have contested Illumina Cambridge's claims on several grounds and filed counterclaims seeking invalidation of the EPs in suit ('578, '289, '415, '412, '433 EPs). *Id.* ¶17. The UK Proceedings are being conducted on an expedited basis, with a tentative trial date set for November 16, 2020. *Id.* ¶¶20–28. Petitioners will be able to use any evidence they obtain pursuant to this Application in the UK Proceeding until the trial. *Id.* ¶21.

### 6. The Finnish Proceeding

On May 12, 2020, Illumina Cambridge Limited and Illumina Finland Oy filed an action in the Finnish Market Court seeking a preliminary injunction against Labema enjoining Labema from importing, offering, or otherwise putting on the Finnish market or having in its possession for the aforementioned purposes products produced by MGI which allegedly violate the '289 EP (the "Finnish Injunctive Proceeding"). Siitonen Decl., ¶¶10–11. The Finnish Market Court's decision on the request for an interim injunction is expected in September 2020. *Id.* ¶13. In the event the injunction is granted, Illumina Cambridge and Illumina Finland Oy must initiate formal infringement proceedings within one month (the "Contemplated Finnish Infringement Proceeding"). *Id.* Labema believes that it is likely Illumina Cambridge and Illumina Finland Oy will initiate infringement proceedings even if they are not successful in obtaining the interim injunction. *Id.* Labema plans to initiate a nullity action challenging the validity of the '289 EP (the "Contemplated Finnish Nullity Proceeding", and together with the Finnish Injunctive Proceeding and the Contemplated Finnish Infringement Proceeding, the "Finnish Proceedings") before the Market Court. Labema anticipates that the Market Court will deal with the Contemplated Nullity Action at the same trial as the Contemplated Finnish Infringement Proceeding. *Id.* The Contemplated Finnish Infringement and Nullity Proceedings are likely to take between 12 to 20 months from commencement to conclusion. *Id.*

Petitioner Labema will be able to present evidence at least during the "preparation" phase of the Finnish Proceedings. *Id.* ¶26. Labema may also be able to submit new evidence until the final hearings in the Finnish Proceedings, or on appeal. *Id.*

### 7. *The Swedish Proceedings*

In January 2020, Illumina Cambridge initiated infringement proceedings against (i) Latvia MGI and (ii) BGI Complete before the Patent and Market Court (Sw. *Patent- och marknadsdomstolen*) in Sweden based on the '289 and '412 EPs (the "<u>Swedish Infringement Actions</u>"). Declaration of Håkan Borgenhäll ("Borgenhäll Decl."), ¶11. The Petitioners have contested Illumina Cambridge's claims on several grounds and filed counterclaims seeking invalidation of the EPs in suit (the "<u>Swedish Invalidity Actions,</u>" and together with the Swedish Infringement Actions, the "<u>Swedish Proceedings</u>"). *Id.* The Swedish Patent and Market Court has informed the parties that the final hearing in these Proceedings will likely take place in October 2021. *Id.* ¶14. The general rule is that parties to a Swedish patent dispute can introduce evidence until the proceedings are due to be closed, *id.* ¶22, which will likely occur approximately the summer of 2021, *id.*

### 8. *The French Proceeding*

On May 15, 2020 MGI International initiated a revocation action against Illumina Cambridge before the *Tribunal judiciaire de Paris* (Paris First Instance Court) (the "<u>French Proceeding</u>"), Declaration of David Por ("Por Decl."), ¶8, seeking to nullify the French parts of the '578 and '289 EPs, *id.* First instance patent proceedings in France last on average approximately 24 months from the date of the writ of summons to the judgement of the court. *Id.* ¶15. Additional evidence can be filed by either party until the time when the Judge in charge of the management of the case issues a "closing order," which typically occurs 1 to 3 months before the trial date. *Id.*

### 9. *The Belgian Proceedings*

On June 24, 2020, Illumina Cambridge Limited served a writ of summons for an infringement action on MGI International (the "<u>Belgian Infringement Proceeding</u>"). Declaration of Peter Van Dyck ("Van Dyck Decl.") ¶13. This proceeding is expected to be handled on an expedited timeframe (a judgment is usually obtained in less than a year). *Id.* In its writ of summons, Illumina

-10-

Cambridge Limited claims that MGI International has infringed the Belgian part of the '289 EP by offering and supplying an allegedly infringing sequencing reagent kit and sequencing platform. An introductory case management hearing before the Brussels Commercial Court was held on July 29, 2020. *Id.* MGI International is due to file its first submission by September 28, 2020. On July 14, 2020, MGI International filed a revocation action before the Dutch-speaking Commercial Court of Brussels ("Belgian Revocation Action", and together with the Belgian Proceeding, the "Belgian Proceedings"), *id.* ¶14, where it argues that the '289 and '578 EPs are invalid, *id.*

### 10. The Spanish Proceeding

On July 28, 2020, Illumina Cambridge and Illumina Singapore Pte Limited ("Illumina Singapore") filed an application seeking a preliminary injunction and other precautionary measures against MGI and Rafer ("Spanish Injunction Proceeding") and a patent infringement lawsuit ("Spanish Infringement Proceeding", and together with Spanish Injunction Proceeding, the "Spanish Proceedings"). Castillo Decl., ¶15. The Spanish Proceedings were served on Rafer on August 11, 2020. *Id.* Service is yet to be effected on MGI. *Id.* A preliminary injunction hearing has been scheduled for September 16, 2020. *Id.* MGI Latvia and Rafer will have the opportunity to introduce any evidence obtained pursuant to this 1782 Application (i) during any hearing on a request for a preliminary injunction and to support their statement of opposition, and (ii) to support their statement of defense and counterclaim in the Spanish Infringement Proceeding. *Id.* ¶25.

### 11. The Hong Kong Proceeding

On August 14, 2020, Illumina Cambridge Limited commenced legal proceedings in the High Court of the Hong Kong SAR against Petitioners MGI Tech, BGI Complete, MGI International, BGI-HongKong, BGI Tech, and BGI Health, alleging patent infringement of the HK '509 patent (which is based on the '809 EP) and seeking injunctive relief ("Hong Kong Proceedings"). Lo Decl., ¶¶9-11. While Illumina Cambridge's writ of summons does not set out in detail the claims alleged against the defendants, Petitioners are likely to dispute, inter alia, the validity of the HK 509 patent (and hence the '809 EP) and the allegations of infringement, including the various alleged infringing acts, against the defendants. *Id.* ¶14. It is also expected that the defendants in these Proceedings will be seeking the revocation of the HK 509 patent by the court. *Id.* Evidence to be obtained under

this 1782 Application can be submitted in the Hong Kong Proceedings until the case is scheduled for trial, which usually takes place only after the parties confirm that all the evidence that they would wish to adduce for the trial has been submitted. *Id.* ¶22. It is likely that the final trial in these Proceedings will not be scheduled for another 2 to 3 years. *Id.*

### D.    U.S. Procedural Background

#### 1.    *Adversarial Proceedings*

Within the United States, there are three cases pending between (i) Petitioners' affiliates and (ii) Respondent and Illumina Cambridge. The first U.S. case is in the United States District Court for the District of Delaware, where CGI asserts that Illumina willfully infringed the '132 US Patent.[15] *See Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970-MN (D. Del.) (the "Delaware Proceeding"). In response, Illumina and Illumina Cambridge have asserted patent infringement counterclaims against various BGI-related defendants' standard MPS product only.[16] The BGI defendants have never sold or offered the standard MPS product in the United States.[17] These patents relate to the use of Ascorbic Acid (vitamin C) to prevent degradation of DNA being sequenced, and claim the same basic subject matter as the '412 EP.

Illumina and Illumina Cambridge filed the second relevant case in the Northern District of California on June 27, 2019 against, inter alia, CGI and MGI Tech. *See Illumina, Inc., et al. v. BGI Genomics Co., LTD. et al*, No. 3:19-cv-03770-WHO (N.D. Cal.) (the "First California Proceeding"). As with the Delaware action, Illumina asserted infringement of the '537 and '200 US Patents only against Defendants' Standard MPS products. The '537 and '200 patents are closely related to the EPs asserted in Germany, Switzerland and Denmark. While they do not all share the same priority date and specification, they all are directed to the use of a certain molecule, azidomethyl, used as the 3'OH block on nucleotides.[18] CGI filed a counterclaim against Illumina asserting infringement

---

[15]   A CGI patent for improving the efficiency of DNA sequencing by reducing the number of signals required for nucleotide detection. Milowic Decl., ¶11, Ex. 15.
[16]   Milowic Decl., Ex. 24.
[17]   *Id.*
[18]   Milowic Decl., Ex. 14.

of the '984 US Patent, which is directed to high density arrays that are used in Illumina's sequencing platform.[19]

Illumina and Illumina Cambridge filed the third U.S. Case on February 27, 2020, also in the Northern District of California. *See Illumina, Inc. et al. v. BGI Genomics Co., Ltd. et al.,* No. 3:20-cv-01465 (N.D. Cal.) (the "Second California Proceeding," and together with the Delaware Proceeding and First California Proceeding, the "US Litigation Proceedings"). In the Second California Proceeding, Illumina asserts infringement of the '973, '444, and '025 US Patents.[20] These patents also largely overlap with the patents asserted in the foreign proceedings. Like the '537 and '200 patents at-issue in the First California Proceeding, the major focus of these patents is the azidomethyl molecule that is used as the 3'OH block on nucleotides. This molecule is also the focus of the patents Illumina asserted against the various BGI entities outside the United States.

### 2. *Illumina Cambridge's Section 1782 Application*

On September 6, 2019, Illumina Cambridge filed an *ex parte* application in the Northern District of California seeking leave to serve subpoenas on three of Petitioners' US affiliates (BGI Americas Corp, MGI Americas, Inc., and Complete Genomics, Inc.) pursuant to Section 1782 for use in the Swiss, Turkish, German, and Danish Proceedings. *See In re Application of Illumina Cambridge Ltd.,* No. 3:19-80215-WHO (N.D. Cal.) (the "Illumina 1782 Proceeding").[21] The court granted the application on November 7, 2019, and granted Illumina Cambridge leave to serve subpoenas.[22] Thereafter, the respondents in the Illumina 1782 Proceeding filed a motion to vacate the court's order and to quash the subpoenas,[23] which motion the court denied in part on February 19, 2020.[24] The respondents in that action have therefore been complying with the document and testimony subpoenas, and producing the requested discovery.

### E. Discovery Sought In This 1782 Application

---

[19] Milowic Decl., Ex. 15.
[20] Milowic Decl., Ex. 16.
[21] Milowic Decl., Ex. 17.
[22] Milowic Decl., Ex. 18.
[23] Milowic Decl., Ex. 19.
[24] Milowic Decl., Ex. 20.

In this action, Petitioners seek (i) the Transcripts—deposition transcripts of those individuals who are listed as inventors on the Patents At-Issue,[25] and (ii) the Notebooks, including documents such as the laboratory notebooks, inventor notebooks, and results notebooks and/or data files or images which reflect Illumina's and Illumina Cambridge's conception and reduction to practice of the inventions claimed in the Patents At-Issue. The Transcripts cover, among other things, topics that relate to the use of azidomethyl[26] as a 3'OH block on a nucleotide. The Notebooks document the processes by which the Patents At-Issue were developed, and so are highly relevant to each of the Foreign Proceedings. As but one example, in the German Nullity Proceeding MGI International asserts four grounds of nullity. First, MGI International argues that the '578 and '289 EPs are invalid on the basis of Article 83 of the European Patent Convention ("EPC") for lack of sufficient disclosure.[27] Second, MGI International contends that the subject-matter of the '289 EP extends beyond the content of the (parent) application as-filed, such that it is also invalid pursuant to Article 76(1) EPC. Third, MGI International argues that the product claims of the two patents lack novelty over the implicit disclosure of a prior art document, in violation of Article 54 EPC. Fourth, MGI International asks the Court to nullify all claims related to the patents, because they lack the inventive step required by Article 56 EPC for patentability.[28] In particular, MGI International submits that the skilled person would have been prompted to use azidomethyl-blocked modified nucleotides in SBS methods. MGI International further argues that the invalidity of the priority claim results in additional documents forming part of the state of the art, such that the claims also

---

[25]  Petitioners seek four extant deposition transcripts: (1) the transcript from the deposition of Colin Barnes, taken January 6, 2011 in *Life Techs. Corp. v. Illumina, Inc.*, No. 09-706 (D. Del.); (2) the transcript from the deposition of Colin Barnes, taken March 13, 2013 in *Illumina Inc., et al v. Complete Genomics Inc., et al.*, No. 3:12-cv-01465 (S.D. Cal.); (3) the transcript from the deposition of Xiaohai Liu, taken March 20, 2013 in *The Trustees of Columbia University et al v. Illumina Inc., et al*, No. 12-376 (D. Del.); and (4) the transcript from the deposition of Xiaohai Liu, taken August 20, 2020 in the First California Proceeding and the Second California Proceeding. Petitioner further respectfully requests that transcripts of any subsequent depositions of inventors of the foreign patents, including any depositions of Shankar Balasubramanian, Colin Barnes, Joseph Brennan, John Milton, Silke Ruediger, Mark Smith, Harold Swerdlow, or Xiaolin Wu also be made available in the Foreign Proceedings described herein.

[26]  Because the transcripts are covered by a protective order, Petitioner cannot give anything more than a high level description of their contents at this juncture.

[27]  The notion of sufficiency of disclosure in European patent law is similar to the notion of enablement under US law: it derives from the requirement that the patentee discloses sufficiently his invention.

[28]  A concept similar to the notion of "prior art" under US patent law pursuant to which patents may be nullified where, faced with a particular technical problem, the skilled person would have been prompted by the prior art to solve it in the same manner as in the patents in suit.

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782

1  lack an inventive step over a document that was published after the priority date of the patents, but
2  before their filing date.

3      The information contained in the Transcripts and Notebooks (which reflect the inventors'
4  analysis of the inventions) bears directly on each of these arguments. According to established
5  jurisprudence of the German Federal Supreme Court, claim construction is an essential and
6  indispensable procedural element of both German infringement and nullity proceedings, one which
7  will usually be performed before the actual assessment of validity or infringement. The purpose is
8  to conceptualize the technical teaching that is conveyed by the wording of the claim, taking into
9  account the description and figures of the patent. The Transcripts and Notebooks are of particular
10  importance in this regard, as they illustrate the "technical teaching" that Illumina Cambridge asserts
11  is protected by its patents. *See, e.g.*, Feldges Decl., ¶¶33–35.

12      Invalidity assessment of patents depends in several respects on the experimental working
13  examples in the patent. When construing the claims, the technical problem is to be determined as
14  an integral part of the claim construction. The technical problem, in turn, must be formulated based
15  on what the patent actually achieves in light of the description, including the working examples.
16  Thus, the working examples impact the scope of the claims, and so may determine whether the
17  claims are invalid in light of the prior art. The Notebooks document these "working examples." *Id.*

18      Additionally, under German law, the question of whether a claimed teaching was obvious
19  with a *reasonable expectation of success* depends, inter alia, on the experimental examples of the
20  patent and on the effort which is therefore required to develop the patented process or product.
21  Again, these "experimental examples" are documented in the Notebooks.[29]

22      The other Foreign Proceedings involve similar questions around the Patents At-Issue, and
23  so the contents of the Notebooks and Transcripts are relevant to each of them. *See* n.34, *infra*.

24      It is also of critical importance to note that *the Notebooks have already been requested by,*
25  *and presumably produced to, BGI, in the California Proceedings*. The same is true of the extant
26  Transcripts, they have either been produced in the US Litigation Proceedings, or they were taken in

27  _____
   [29]  To the extent Notebooks and Transcripts that reflect work on the patents at issue here have yet to be produced
28  in the ND Cal Proceedings, Petitioner requests that subsequent Notebooks or Transcripts also be subject to the order in
   this proceeding to be produced for use in the Foreign Proceedings.

-15-

those proceedings (and any future depositions will be taken in those proceedings). Given the Transcripts and Notebooks are relevant to the Foreign Proceedings, and to save all parties the expense of additional litigation, the Petitioners requested that Illumina simply agree to allow the Transcripts and Notebooks to be used in the Foreign Proceedings.[30] Illumina refused that request, while acknowledging that they could be properly sought via a Section 1782 application. *See* Milowic Decl., Exs. 21–22 (Illumina's counsel: "[W]e are not willing to link the issue of use of the lab notebooks to the issues we've raised . . . BGI entities litigating in Europe could have brought their own Section 1782 application long ago."); Ex. 23 (requesting that Transcripts be used in Foreign Proceeding).

## III.   ARGUMENT

### A.   Legal Framework

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a foreign proceeding. The statute, in relevant part, states: "The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person." 28 U.S.C. § 1782.

An application made pursuant to Section 1782 must satisfy three statutory requirements: (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person. 28 U.S.C. § 1782(a); *see also London v. Does 1-4*, 279 F. App'x 513, 515 (9th Cir. 2008) ("Under 28 U.S.C. § 1782, a district court may order a person residing within its district to produce documents for use in a foreign legal proceeding, unless it would violate a legal privilege.").

---

[30]  Milowic Decl., Exs. 21-22.

After determining that the three statutory requirements are satisfied, courts may then consider four discretionary factors in deciding whether to grant a Section 1782 application, namely: (i) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (ii) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (iii) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (iv) whether the subpoenas contain unduly intrusive or burdensome requests. *See Intel*, 542 U.S. at 264–65 (2004); *London*, 279 F. App'x at 515.

Moreover, courts in this Circuit evaluate discovery requests under Section 1782 in light of the "twin aims" of the statute: "to provide efficient means of assistance to participants in international litigation in our federal court and to encourage foreign countries by example to provide similar means of assistance to our courts." *In re Mireskandari*, 2012 WL 12877390, at *2 (S.D. Cal. Dec. 20, 2012) (internal citation and quotation omitted). And the Supreme Court and the Ninth Circuit have both acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g., Intel*, 542 U.S. at 247-48; *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 562–63 (9th Cir. 2011) ("In the 20th century, Congress . . . remov[ed] more of the absolute restrictions on the courts' ability to provide assistance [under Section 1782]. One of the important congressional purposes in broadening the scope of federal-court assistance was to encourage reciprocity by other nations.") (internal citations omitted); *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given increasingly broad applicability.") (internal citation omitted).

**B. Petitioners Satisfy The Three Statutory Requirements of Section 1782**

**1. *Respondent is "found" in the Northern District of California.***

Respondent maintains a major Manufacturing, Research, and Development office in Hayward, California.[31] Accordingly, Respondent is found in this District. *See Super Vitaminas, S. A.*, 2017 WL 5571037, at *2 (N.D. Cal. Nov. 20, 2017) (maintaining an office in district is sufficient to satisfy the first *Intel* requirement) (collecting cases). Further, by invoking the jurisdiction of this Court in bringing infringement actions against the BGI companies, Respondent is also subject to personal jurisdiction in this Court, which similarly satisfies the requirement that Respondent is found in this District. *Cf. In re Request for Int'l Judicial Assistance from the 16th Family Ct.*, 2014 WL 1202545, at *1 (N.D. Cal. Mar. 19, 2014) ("The district court has subject-matter jurisdiction over this matter specially conferred by 28 U.S.C. § 1782, and has personal jurisdiction over this case because the Bank of America branches are identified as having mailing addresses in the Northern District of California.").

**2. *The discovery sought is for use in foreign proceedings.***

The Foreign Proceedings all qualify as proceedings "in a foreign or international tribunal" for purposes of Section 1782.

As Illumina Cambridge has already acknowledged, "[c]ourt actions, including patent infringement actions, pending in courts in Germany, Turkey, Switzerland and Denmark plainly satisfy the statutory requirement of a proceeding in a foreign tribunal."[32] This Court agreed in granting Illumina's 1782 petition. *See In re Illumina Cambridge Ltd.*, No. 2019 WL 5811467, at *3 (N.D. Cal. Nov. 7, 2019) ("*Illumina I*") ("[C]ourt actions, including patent infringement actions, pending in courts in Germany, Turkey, Switzerland and Denmark satisfy the statutory requirement of a proceeding in a foreign tribunal."); *Illumina Cambridge Ltd. v. Complete Genomics, Inc.*, 2020

---

[31] *See 4, supra.*

[32] Milowic Decl., Ex. 17 at 13-14 (collecting cases); *AIS GmbHAachen Innovative Sols. v. Thoratec LLC*, 762 F. App'x 447, 448 (9th Cir. 2019) (German court in which a patent infringement case was pending was a foreign tribunal for purposes of § 1782); *IPCom GmbH v. Apple, Inc.*, 61 F. Supp. 3d 919, 922 (N.D. Cal. 2014) (German patent infringement action qualified); *In re Int'l Judicial Assistance*, 2015 U.S. Dist. LEXIS 81550, at *4 (N.D. Cal. June 22, 2015) (Turkish trademark infringement action qualified); *In re Ex Parte Application of Jommi*, 2013 WL 6058201, at *3 (N.D. Cal. Nov. 15, 2013) (Swiss court proceeding qualified); *In re Request for Int'l Judicial Assistance from the Dist. Ct. of Kolding, Denmark*, 2015 WL 13827074, at *1 (W.D.N.C. May 4, 2015) (Danish district court proceeding qualified).

-18-

WL 820327, at *3 (N.D. Cal. Feb. 19, 2020) ("*Illumina II*") (similar). Just like the German, Turkish, Swiss, Spanish, and Danish Proceedings, the other Foreign Proceedings exhibit all the hallmarks of traditional judicial proceedings by acting as a first-instance decision-maker tasked with resolving legal disputes. *See Intel*, 542 U.S. at 264; *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1111 (9th Cir. 2015) ("Both of the foreign patent offices here conduct quasi-judicial proceedings. Those proceedings take place within the agency but carry many of the hallmarks of traditional judicial proceedings: serving as first-instance decision-makers tasked with resolving patent validity disputes."); *London*, 279 F. App'x at 514 (affirming order granting 1782 discovery for use in proceeding brought in "French territory governed by French law"); *In re Apple Retail UK Ltd.*, 2020 WL 3833392, at *1 (N.D. Cal. July 8, 2020) (granting 1782 application seeking discovery for use in English patent infringement proceeding); *In re Letter of Request From Boras Dist. Court, Sweden*, 153 F.R.D. 31, 33 (E.D.N.Y. 1994) (granting 1782 application seeking discovery for use in Swedish proceeding); *Matter of Lufthansa Technick AG*, 2019 WL 331839, at *1 (W.D. Wash. Jan. 25, 2019) (granting 1782 application seeking discovery for use in "contemplated" patent infringement proceedings in Spain).[33]

Petitioners are not required to show that the information sought would be discoverable or admissible in the Foreign Proceedings. *Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *London*, 279 F. App'x at 515 (granting 1782 application seeking discovery which "may be unattainable by the French court [but] is within the [US] district court's jurisdiction and accessible in the United States"); *In re Mak*, 2012 WL 2906761, at *1 (N.D. Cal. July 16, 2012) ("The Supreme Court has consistently held that § 1782 does not contain a 'foreign-discoverability requirement'—*i.e.*, there is no requirement that the information sought be discoverable under the law governing the foreign proceeding."). Rather, Petitioners need only show that the evidence is "relevant" to the Foreign Proceedings. *See In re: Ex Parte*

---

[33] As this case illustrates, 1782 applications are frequently granted where the discovery sought is for use in proceedings which have not yet been initiated but which are within "reasonable contemplation". *See also In re Bayerische Motoren Werke AG*, 2019 WL 5963234, at *3, *5 (N.D. Cal. Nov. 13, 2019) (granting 1782 application for use in "patent infringement and/or nullity proceedings" which were "anticipated to be filed").

-19-

1 *Application Varian Med. Sys. Int'l AG*, 2016 WL 1161568, at *3 (N.D. Cal. Mar. 24, 2016) (finding

2 second statutory factor satisfied where petitioner sought "to use the discovery it seeks from

3 [respondent] to support its patent claims" in foreign proceeding); *In re Application of HydroDive*

4 *Nigeria, Ltd.*, 2013 WL 12155021, at *3 (S.D. Tex. May 29, 2013) ("The burden imposed on the

5 applicant on this issue is *de minimis*. Relevancy in this context is broadly construed and

6 encompasses any material that bears on, or that reasonably leads to other matters that could bear on,

7 any issue that is or may be in the case." (internal citation omitted)). Here, Petitioners plainly satisfy

8 this requirement as confirmed by foreign counsel responsible for Petitioners' cases in the Foreign

9 Proceedings.[34]

10         **3.**    *Petitioners are "Interested Persons."*

11       Finally, Section 1782 requires persons seeking discovery to show that they possess a

12 sufficient interest in the foreign proceedings. While Section 1782 broadly covers all those with the

13 right to participate and submit evidence in foreign proceedings, there is "[n]o doubt litigants are

14 included among, and may be the most common example of, the interested persons who may invoke

15 § 1782." *Intel*, 542 U.S. at 256 (internal citation omitted); *see also Akebia*, 793 F.3d at 1110–11

16 ("[Petitioner] is a party to the foreign proceedings underlying this case; indeed, it is the entity that

17 seeks to invalidate [respondent's] European . . . patents because of their potential effect on the nature

18 of the products that [petitioner] develops. Accordingly, [petitioner] has a 'reasonable interest' in

19 obtaining judicial assistance and, therefore, may apply for judicial assistance pursuant to § 1782.");

20 *Illumina I*, 2019 WL 5811467, at *4 ("Illumina Cambridge is a plaintiff in all the Foreign Actions.

21 It is therefore an 'interested person' for purposes of the statute"); *Illumina II*, 2020 WL 820327, at

22 *4 (same).[35] Petitioners are parties or putative parties to the various Foreign Proceedings, and thus

23 are plainly "interested person[s]" under Section 1782.[36]

24

25     [34] Alica Decl., ¶16; Bording Decl., ¶14; Borgenhäll Decl., ¶¶17–20; Calame Decl., ¶22; Castillo Decl., ¶17-18; Can Decl., ¶15; Feldges Decl., ¶¶30–35; Lo Decl., ¶16; Por Decl., ¶¶16–18; Ridway Decl., ¶¶22–24; Siitonen Decl., ¶18; Van Dyck Decl., ¶15.

26     [35] *See also Matter of Application of O2CNI Co., Ltd.*, 2014 WL 689082, at *1 (N.D. Cal. Feb. 21, 2014) ("[The applicant] is an alleged victim . . . and thus is an 'interested person.'"); *In re Ex Parte Application of Societe d'Etude de*

27 *Realisation et d'Exploitation Pour le Traitement du Mais*, 2013 WL 6164435, at *3 (E.D. Pa. Nov. 22, 2013) (similar).
    [36] To be clear, Petitioners Latvia MGI; MGI Tech; MGI International; and BGI Complete; are seeking evidence

28 related to the '578, '289, '412, and '415 EPs; Petitioners Labema and Genoks are seeking the evidence relating to the

**MEMORANDUM OF LAW IN SUPPORT OF APPLICATION**
**TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782**

**C.    All of the Discretionary Factors Under Section 1782 Weigh In Favor Of Permitting The Discovery Petitioners Seek.**

**1.    *The first Intel factor favors granting discovery.***

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding.  "[W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 264.

Here, Illumina is not a party to any of the Foreign Proceedings save one.[37]  While Illumina Cambridge, Illumina's subsidiary, is a party to certain of the Foreign Proceedings, as Illumina persuasively argued in the Illumina 1782 Proceeding:

> "Courts sometimes ask whether the target of the discovery application is related to a party in the underlying foreign proceeding on the assumption that the foreign court could compel discovery from the subsidiaries and affiliates of a party.  But that expectation does not apply to foreign jurisdictions that do not have effective pretrial discovery procedures.  In the German, Swiss, Turkish and Danish litigation systems, there is no effective right to pretrial discovery that is even remotely comparable to that in the United States."

Milowic Decl., Ex. 17 at 15.[38]  The same is true of the French, Finnish, Swedish, Spanish, Belgian, Hong Kong, and English litigation systems:  there is no comparable pre-trial discovery mechanism by which Petitioners could in practice obtain the requested discovery in the Foreign Proceedings in those countries.[39]  Thus, even acknowledging that Illumina is a party to one of the Foreign Proceedings, this factor weighs in favor of allowing discovery. *See In re IPCom GmbH& Co. KG*, 2014 WL 12772090, at *2 (N.D. Cal. Apr. 10, 2014) (lack of effective discovery procedure in Germany rendered factor neutral even though the target of the subpoena was a defendant in the German action); *Illumina Cambridge Ltd v. Complete Genomics, Inc.*, 2020 WL 1694353, at *3 (N.D. Cal. Apr. 7, 2020) (*"Illumina III"*) ("It may be true that some of the information sought is in

---

'289 EP; and Petitioners BGI Europe and Rafer are seeking the evidence relating to the '578 and '289 EPs. Petitioners believe the distribution and use of such discovery can adequately be addressed by a protective order.

[37]  While Illumina Inc. is a party to the Danish Action, the relevant Petitioners involved in the Danish Action are unable to obtain the discovery sought here from Illumina Inc. via the Danish Action, as explained in the declaration of Mr. Bording. Bording Decl., ¶¶15–24.

[38]  Mem. of Law in Support of Ex Parte Appl. Of Illumina Cambridge Ltd. for Leave to Serve Subpoenas, Illumina 1782 Proceeding, D.N. 2 ("Illumina 1782 MOL").

[39]  Borgenhäll Decl., ¶23, n.8; Por Decl., ¶20; Siitonen Decl., ¶¶19, 20, 28; Castillo Decl., ¶19; Van Dyck Decl., ¶18; Lo Decl., ¶¶19–21; Ridgway Decl., ¶29.

the control of parties to the German and Swiss Actions because MGI Tech is a party to the German Action and is the parent of a party to the Swiss Action, and MGI Tech is currently the parent of MGI and CGI. However, the information sought is not within the control of the parties to the other two actions.").

On the other hand, the Transcripts and Notebooks can be obtained in the US, indeed, ***Illumina has either already produced them here or has an obligation to produce them here.*** *See* §II.E., *supra*. Because the purpose of Section 1782 is to facilitate production of any discovery which "*may be* unattainable by [a foreign] court [but which] is within the [US] district court's jurisdiction and accessible in the United States," *London*, 279 F. App'x at 515 (emphasis added),[40] the first factor favors granting the application.[41] Holding otherwise would create an unjust information asymmetry between the two sides in these litigations, wherein Illumina and its subsidiaries are free to seek discovery from BGI and its subsidiaries in the U.S. under Section 1782, but BGI cannot seek such discovery from Illumina. Unsurprisingly, *Intel* and its progeny disapprove of such an outcome. *See, e.g., Intel*, 542 U.S. at 244 ("When information is sought by an 'interested person,' a district court can condition relief upon reciprocal information exchange.").

### 2. *The second Intel factor favors granting discovery.*

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to evidence obtained through Section 1782. As Illumina Cambridge has already argued, in establishing that the German, Swiss, Turkish, and Danish Proceedings would welcome the requested discovery: "The second Intel factor weighs in favor of discovery unless the foreign tribunal in question has expressly made it clear that it would not accept the evidence. Illumina 1782 MOL at 16 (citing *In re Application of JSC Raiffieinsenbank*, 2016 WL 6474224, at *5 (N .D. Cal. Nov. 2, 2016) ("Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation and international aspects'")). And the

---

[40] *See also* Illumina 1782 MOL at 15 ("The key test under [the first *Intel*] prong is whether the 'evidence, available in the United States, *may be* unobtainable absent' an order by this court under Section 1782.") (citing *Application Pursuant to 28 U.S.C. §1782 by Nikon Corp. v. GlobalFoundries U.S., Inc.*, 2017 WL 4647753, at *4 (N.D. Cal. Oct. 16, 2017) (emphasis added)).

[41] This factor is, at most, neutral with respect to the UK Proceeding in light of the foregoing considerations.

declarations submitted with this Application, along with the declarations from foreign counsel Illumina Cambridge submitted in the Illumina 1782 Proceeding, establish that the tribunals overseeing each of the Foreign Proceedings would be receptive to the requested discovery, and Petitioners will have the opportunity to submit the requested discovery in those proceedings.[42] This factor therefore weighs in favor of granting the Application. *See In re Application Pursuant to 28 U.S.C. § 1782 to Take Discovery of ASML U.S., Inc.*, 707 F. App'x 476, 477 (9th Cir. 2017) ("[E]ven for the documents located both in the United States and abroad, the second Intel factor is met because [petitioner's] experts stated, in unrebutted declarations, that the foreign tribunals would welcome the discoverable evidence."); *JSC Raffieinsenbank*, 2016 WL 6474224, at \*5; *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) ("While there is no indication that the German court will be receptive the 1782 discovery, there is no indication that it would be hostile to such discovery and the German court is in the best position to make admissibility determinations."); *see also* Illumina 1782 MOL at 16–17 (collecting cases where courts accepted discovery obtained pursuant to Section 1782). The number and complexity of the Foreign Proceedings, and the requested discovery's central importance to the issues raised therein, solidify that this factor weighs heavily in favor of granting this Application. *See, e.g.*, *In re Ex Parte Apple Inc.*, 2015 WL 5838606, at \*4 (S.D. Cal. Oct. 7, 2015) ("[G]iven the multiplicity of foreign proceedings and the potential complexity of foreign patent litigation, the Court finds that [the second *Intel*] factor weighs in favor of granting the Ex Parte Application."); *In re Ex Parte Application of Smith*, 2012 WL 12885234, at \*2 (S.D. Cal. Oct. 9, 2012) (finding that second *Intel* factor favored granting application where the proof sought was "relevant to determining" the issues in the foreign proceeding).

3. ***The third Intel factor favors granting discovery.***

The third *Intel* factor looks to "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. In *Intel*, the Supreme Court expressly rejected the notion that Section 1782 requires that the evidence be discoverable in the foreign proceeding itself, and courts in this

---

[42] *See* Alica Decl., ¶¶15, 21; Bording Decl., ¶¶26–27; Borgenhäll Decl., ¶¶22–24; Calame Decl., ¶¶33–38; Çan Decl., ¶¶14, 20; Feldges Decl., ¶¶40–45; Castillo Decl., ¶¶25, 27; Ridgway Decl., ¶¶21, 33–37; Van Dyck ¶¶24–26; Por Decl., ¶¶33–35; Lo Decl., ¶¶22–24; Siitonen Decl., ¶¶27–28.

-23-

Circuit have added that an applicant need not show that the specific documents sought would be admissible abroad. *See Chevron Corp. v. E-Tech Intern.*, 2010 WL 3584520, at *4 (S.D. Cal. Sept. 10, 2010); *Intel*, 542 U.S. at 261 ("A foreign nation may limit discovery within its domain for reasons peculiar to its own legal practices, culture, or traditions—reasons that do not necessarily signal objection to aid from United States federal courts."). Nor is a Section 1782 applicant required to first exhaust its remedies in the foreign court. *See Illumina III*, 2020 WL 1694353, at *3–4 ("Illumina does not dispute that it has not attempted discovery, or that discovery in the foreign tribunals may be more appropriate for certain of the information sought. Instead, it argues that it need not first seek discovery in the foreign tribunals; the relevant inquiry is whether foreign tribunals prohibit the evidence sought, which is not the case for any of the courts here . . . exhaustion of discovery procedures in the foreign tribunal may not be required before a party may assert a Section 1782 claim.") (internal citation omitted); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement,' finds no support in the plain language of [Section 1782] and runs counter to its express purposes . . . ."); *see also* Illumina 1782 Proceeding D.N. 56 at 11 (collecting additional cases).

Here, there is no reason to believe that requiring production of any of the discovery sought violates any policies of the foreign jurisdictions. Petitioners do not seek customer account information, state secrets, or attorney-client communications—they merely seek documents that are in the possession of private parties. None of the foreign jurisdictions have any law or public policy against such discovery. [43] Moreover, if Respondents reasonably believe that any responsive documents present confidentiality concerns, Petitioners are prepared to consider mechanisms for accommodating them, including a protective order, which Illumina Cambridge has already acknowledged would be sufficient to address such concerns. *See, Illumina Cambridge Ltd.,* 2020 WL 1694353, at *5 ("Illumina responds that the parties negotiated a protective order that will provide reasonable protection for their alleged trade secret information. Illumina also cites

---

[43] *See* Alica Decl., ¶21; Bording Decl., ¶23; Van Dyck Decl., ¶25; Bording Decl., ¶¶26–27; Siitonen Decl., ¶¶27–28; Por Decl., ¶¶34–35; Feldges Decl., ¶¶41–45; Lo Decl., ¶¶23–24; Castillo Decl., ¶26; Borgenhäll Decl., ¶¶23–24; Calame Decl., ¶¶35–38; Can Decl., ¶20; Ridgway Decl., ¶34.

MEMORANDUM OF LAW IN SUPPORT OF APPLICATION
TO TAKE DISCOVERY UNDER 28 U.S.C. § 1782

numerous cases that have found that protective orders and foreign procedures can provide reasonable safeguards for confidential information.").[44]

### 4. *The fourth Intel factor favors granting discovery.*

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. *In re Ex Parte Application of Ambercroft Trading Ltd.*, 2018 WL 2867744, at *5 (N.D. Cal. June 11, 2018) ("The proper scope of discovery arising out of a § 1782 application is generally determined by the Federal Rules of Civil Procedure."); *see also LEG Q LLC*, 2017 WL 3780213, at *11 ("[T]he intrusiveness and burden of Section 1782 disclosure are evaluated under the same standards that typically govern discovery requests under the Federal Rules of Civil Procedure."). Requests only qualify as overly broad where "they are not narrowly tailored, request confidential information and appear to be a broad 'fishing expedition' for irrelevant information." *Matter of de Leon*, 2020 WL 1820683, at *3 (N.D. Cal. Apr. 10, 2020). Here, Petitioners seek only two categories of documents, the Transcripts and the Notebooks—documents *which have already been collected and produced in the US Proceedings*. Whatever minimal burden Respondents may incur by producing the requested discovery a second time, it is both modest and proportionate given the circumstances, particularly given that Respondents could have avoided that burden entirely by simply agreeing to allow the already-produced Notebooks and Transcripts to be utilized in the Foreign Proceedings.[45]

## IV. CONCLUSION

For the foregoing reasons, Petitioners respectfully request that the Court (a) grant the Application; (b) enter the Proposed Order attached to the Milowic Declaration as Exhibit 1; (c) authorize Petitioners, pursuant to 28 U.S.C. § 1782, to serve the Subpoena upon Respondent; and (d) grant any and all other relief to Petitioners as is deemed just and proper.[46]

---

[44] *See* Illumina 1782 Proceeding D.N. 56 at 16-17 (collecting cases); Alica Decl., ¶20; Bording Decl., ¶¶28–31; Borgenhäll Decl., ¶¶25–27; Calame Decl., ¶¶39–41; Feldges Decl., ¶¶ 46–50; Lo Decl., ¶¶29–32; Can Decl. ¶19;

[45] Milowic Decl., Exs. 21–23.

[46] Petitioner respectfully requests that this Court permit it to use any evidence obtained pursuant to the Subpoena in any additional proceeding pending or commenced as a result of the same transactions, patents, or events underlying this Application.

DATED: September 4, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ David Bilsker*
David Bilsker (Bar No. 152383)
davidbilsker@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, California 94111
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Joseph Milowic III (*pro hac vice forthcoming*)
josephmilowic@quinnemanuel.com
Lucas Bento (*pro hac vice forthcoming*)
lucasbento@quinnemanuel.com
Colin Steele (*pro hac vice forthcoming*)
colinsteele@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010
Telephone: (212) 849-7000
Facsimile: (212) 849-7100

*Attorneys for Petitioners*

-26-