# UNITED STATES DISTRICT COURT
# FOR THE NORTHER DISTRICT OF CALIFORNIA

IN RE APPLICATION OF LATVIA MGI TECH SIA ET AL FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782

Case No. 20-MC \_\_\_\_

CV-20 80152 MISC NC

## DECLARATION OF THIERRY CALAME

I, Thierry Calame, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury under the laws of the United States, as follows:

1. I submit this declaration in support of Latvia MGI Tech SIA and Witec AG ("Witec") ("MGI" or "Petitioners")'s Application and Petition From Illumina Inc. ("Respondent") For An Order To Conduct Discovery For Use In A Foreign Proceeding Pursuant To 28 U.S.C. § 1782 ("1782 Application"). Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the 1782 Application and accompanying Memorandum of Law.

2. Unless otherwise indicated, all facts set forth in this declaration are based upon: (a) my personal knowledge; (b) my review of relevant documents, including the proposed subpoenas; and (c) information supplied to me by the Petitioners or their officers, directors, and employees, or professionals retained by them.

3. All exhibits attached hereto are true and accurate copies, or true and accurate excerpts of those copies. Where an exhibit is in a foreign language a certified translation is provided.

## I. BACKGROUND AND QUALIFICATIONS

4. I am an attorney admitted to practice in Switzerland. I am a partner at the law firm of Lenz & Staehelin based in Zurich, Switzerland. I am also the current President of the European Patent Lawyers Association (EPLAW), a member of the board of directors of the

Swiss Federal Agency for Science-Based Innovation Innosuisse and a permanent lecturer at the Swiss Federal Institute of Intellectual Property.

5. I was admitted to the bar in 1996 and I am qualified to practice in all Swiss courts. I received a master's degree in chemistry from the Swiss Institute of Technology in Zurich in 1991 (Dipl. Nat. Sc. ETH) as well as a law degree from the University of St. Gallen in 1994 (lic. iur.). I also obtained a doctorate in law from the University of St. Gallen in 2001 (Dr. iur.).

6. I am the Co-Head of my firm's Intellectual Property practice group and a member of my firm's Litigation and Arbitration practice group. My practice is focused on intellectual property law, with a particular emphasis in patent law. I have extensive experience in representing clients in patent and other intellectual property related litigation and arbitration proceedings in a broad range of technical fields and notably in the life sciences sector. I also have significant experience sitting as an arbitrator in intellectual property related arbitration proceedings.

7. I am the lead lawyer for MGI in the patent infringement action commenced by Illumina Cambridge ("Illumina Cambridge") against MGI in the Federal Patent Court in Switzerland ("Swiss Proceedings").

8. A copy of my resume is attached hereto as **Exhibit E.**

## II. TECHNOLOGY BACKGROUND

9. The Swiss Proceedings concern patents in the field of DNA sequencing, more specifically in the field of DNA sequencing-by-synthesis (SBS). The SBS method proceeds stepwise, and at each step a building block is added to a growing strand. In the course of the SBS method, a certain position of the building blocks must be protected from unwanted reactions. In a first aspect, the SBS method at stake relies on specific building blocks, i.e. modified nucleotides, wherein the modification is a specific protecting group.

10. On the other hand, the individual building blocks need to be identified when they have been added to a growing strand. In the SBS method at stake, this is done by way of a fluorescent label attached to the building blocks. In a second aspect, the SBS method at stake relies on a certain buffer that is used in the fluorescence detection step.

## III. SWISS PROCEEDINGS

11. Illumina Cambridge commenced the Swiss Proceedings on June 28, 2019 asserting that MGI infringes the Swiss parts of European Patent No. 1 530 578 B1 ("<u>578 Patent</u>") and European Patent No. 1 828 412 B2 ("<u>412 Patent</u>").[1] More specifically, Illumina Cambridge asserts that certain DNA sequencing platforms and/or sequencing reagent kits allegedly offered and distributed by MGI in Switzerland infringe claims 1, 4, 6, 7, 9, 12, 17, 25 of the '578 Patent as well as claims 1, 2, 3, 4, 8, 9, 10, 12, 13, 14 and 15 of the '412 Patent. Illumina Cambridge seeks injunctive relief and financial compensation in the Swiss Proceedings.

12. MGI filed its Statement of Defense on November 25, 2019.[2] MGI asserts that it has not conducted any infringing acts in Switzerland and, thus, MGI lacks the capacity to be sued and/or Illumina lacks a legal interest in seeking relief. MGI filed a procedural motion requesting a limitation of the Swiss Proceedings to the question of MGI's capacity to be sued and Illumina Cambridge's lack of legal interest, respectively.

13. In addition, MGI disputes that Illumina Cambridge has established infringement. Specifically, MGI asserts that its products do not make use of all claim features of the invoked '578 Patent and '412 Patent.

14. Moreover, MGI asserts the invalidity of the '578 Patent and '412 Patent. Specifically, it is MGI's position that the '578 Patent lacks inventive step and that the '412

---

[1] A true and correct copy of the Complaint, which has been filed in English, is attached hereto as <u>Exhibit A</u>.
[2] A true and correct copy of the Statement of Defense, which has been filed in English, is attached hereto as <u>Exhibit B.</u>

Patent is invalid on multiple grounds (including added matter, lack of novelty and lack of inventive step).

15. Finally, MGI alleges that Illumina Cambridge's prayers for injunctive relief are indefinite and thus inadmissible.

16. On February 26, 2020, a preparatory hearing took place before the President and the Judge-Rapporteur (a technical judge) of the Federal Patent Court.

17. On May 11, 2020, Illumina Cambridge filed its Reply[3], and on June 25, 2020, MGI filed its Rejoinder[4].

18. Illumina Cambridge will have the possibility to comment on new arguments and new evidence in MGI's Rejoinder by August 27, 2020.

19. At the end of November 2020, the technical judge (i.e., the Judge-Rapporteur) will issue his expert opinion, and the parties will be invited to comment on the expert opinion in written submissions by mid-January 2021.

20. The final hearing is currently expected to take place in February 2021 or later.

21. In addition to the proceedings against MGI, Illumina Cambridge filed an infringement action against the Swiss company Witec AG, a distributor for MGI products.[5] The action was filed with the Federal Patent Court on August 7, 2020. Illumina Cambridge claims that Witec AG's alleged offering of sequencers and sequencing reagent kits infringes its 578 Patent and 412 Patent. It requests injunctive and monetary relief and, additionally, it requests a preliminary ruling obliging Witec AG to release customer information. Such proceedings have just started and Illumina Cambridge will first have to pay an advance on court costs before a response deadline will be set for filing a Statement of Defense in both the ordinary and preliminary proceedings. The preliminary proceedings can be expected to last 4

---

[3] A true and correct copy of the Reply, which has been filed in English, is attached hereto as **Exhibit C**.
[4] A true and correct copy of the Rejoinder, which has been filed in English, is attached hereto as **Exhibit D**.
[5] Witec AG is a company incorporated in Switzerland with its registered seat in Sursee, Switzerland.

to 6 months. In the ordinary proceedings a first instance judgment can be expected within approximately 18 months.

## IV. JUDICIAL ASSISTANCE PURSUANT TO 28 U.S.C. § 1782

22. MGI is seeking the discovery of laboratory notebooks and internal invention notices in relation to the '578 Patent and the '412 Patent ("Notebooks") as well as deposition transcripts of the inventors of the Patents-at-Issue produced in parallel US proceedings ("Transcripts"). Such Notebooks and Transcripts are relevant and necessary for MGI's invalidity challenges in the Swiss Proceedings. Specifically, these documents are important sources for understanding and assessing Illumina Cambridge's alleged inventions and the extent to which the inventors relied on prior art references. With respect to the invalidity challenges concerning the '578 Patent and the '412 Patent, both novelty and obviousness of the claimed subject-matter are at stake. In particular with respect to obviousness, it is important to assess i) what the skilled person would or would not have done in order to arrive at the invention; and ii) which prior art references the skilled person would have looked at. Such information is typically included in Notebooks (and would arguably be reflected in the Transcripts from the inventors themselves), setting out the series of experiments that ultimately led to the invention. Likewise, invention notices put the invention in perspective vis-à-vis the prior art, and explain the differences over the prior art.

23. Under Swiss civil procedure, there is generally no right of pretrial discovery as practiced in the United States. Under Swiss law, there is no obligation for parties to disclose documents and information to the opposing party that are relevant to the dispute. Thus, the discovery MGI is seeking in the 1782 Application would not be available in Switzerland.

24. Swiss law provides for limited tools for obtaining documents and materials prior to commencing litigation. According to Article 77 of the Swiss Patent Act, the court can order, as a preliminary measure, a description or seizure of an allegedly infringing product,

process or means of production based on a prima facie showing of infringement. Similarly, pursuant to Article 158 of the Swiss Civil Code of Procedure, a party can at any time request the court to order the provisional seizure of evidence if it prima facie established that this evidence is likely to be destroyed or abandoned or there is another legitimate interest for the seizure, such as analyzing the merits of a future lawsuit.

25. These tools are of no value to MGI in the present circumstances. Both provisions are limited to the description and seizure of evidence located in Switzerland. The Notebooks and Transcripts which MGI is seeking in these 1782 proceedings are located outside of Switzerland. Article 77 of the Patent Act is additionally limited to obtaining evidence for the purpose of proving infringement, while MGI is seeking evidence for the purpose of proving the invalidity of Illumina's patents.

26. A Swiss court may also order a party, upon specific request of the other party, to produce certain specified documents (or narrowly defined categories of documents) which are relevant and material to the outcome of the case. However, the threshold for a successful request is, generally speaking, high. One has to (i) to specify the requested documents as well as to show that the requested documents (ii) are relevant and material to the outcome of the case and (iii) are in the possession of the requested party. More specifically, a request would typically have to fulfill the following requirements:

27. *Specificity*: The description of the requested document must be in sufficient detail to identify it or, if the request is for a category of documents, the category must be narrow and specific. The description of the requested document is generally expected to contain three elements: (1) author and/or recipient of the document, (2) date or presumed time frame and (3) presumed content of the document. If a narrow and specific category of documents is requested, the requesting party should identify the initial and the final date of

issuance of the documents being requested within such category. So-called "fishing expeditions" are not permissible and are regularly dismissed from the outset.

28. *Relevance and materiality*: As regards relevance, the requested documents must have probative value, i.e. there must be a probative relationship between the piece of evidence and the factual proposition to which the evidence is addressed. That is, the evidence must make the factual proposition more (or less) likely than it would be without the evidence. To fulfill the requirement of materiality, there must be a link between the factual proposition that the evidence intends to establish, and the substantive law. Thus, the requested document(s) must be required to allow complete consideration of the legal issues presented to the court.

29. *Possession*: The requesting party must show that the documents sought are not in its possession, custody or control, and explain why it assumes the documents requested to be in the possession, custody or control of the requested party.

30. This procedure is of limited value to the requesting party because it is generally not in a position to identify the requested documents with the specificity required by Swiss law. It is however not possible to request the Notebooks and Transcripts without knowing that they have a specific content and describing such content in the Swiss proceedings.

31. In addition, even if a document request of the requesting party fulfilled the above stringent requirements and a Swiss court ordered the other party to produce certain specifically identified documents in its possession, the Swiss court would not have the power to compel compliance with such order if such party refused to produce the evidence. As a matter of Swiss law, if the parties refuse to produce the requested evidence, the parties (other than third parties) cannot be compelled to cooperate. According to Article 164 of the Swiss Code of Civil Procedure, the Swiss court takes the parties' non-compliance with its

production order into account when appraising the evidence. However, non-compliance does not trigger any sanctions.

32. What is more, Swiss courts have no jurisdiction to compel a non-party, such as Illumina Inc., that resides outside of Switzerland to testify or produce information before a Swiss court.

33. Thus, while the discovery MGI is seeking in these 1782 proceedings would not be available in Switzerland, MGI would have the opportunity to introduce the evidence obtained in the United States pursuant to this 1782 Application in the Swiss proceedings. The introduction of the evidence obtained in the United States in the Swiss proceedings would be fully available and not in any way offend a Swiss court.

34. According to Article 229 of the Swiss Code of Civil Procedure, the evidence obtained in the U.S. would have to be introduced in the Swiss proceedings immediately, i.e., within 10 days of receipt of such evidence, and until the final hearing at the latest.

## V. FOREIGN TRIBUNAL'S RECEPTIVENESS TO SECTION 1782 APPLICATION AND NON-CIRCUMVENTION OF SWISS PROOF-GATHERING POLICIES

35. Petitioners have no reason to believe that the Swiss courts would not be receptive to the judicial assistance requested in the 1782 Application, and that the 1782 Application seeks to circumvent the laws and policies of Switzerland. To be clear, there is no restriction or prohibition under Swiss law for collecting and using the type of discovery that is sought here.

36. Indeed, Swiss courts are not restricted in respect of considering evidence obtained in foreign jurisdictions as long as it qualifies as evidence within the meaning of Article 168 of the Civil Code of Procedure.[6] According to this provision, the following

---

[6] *See* Markus Müller-Chen, Aus dem US-amerikanischen Discovery-Verfahren gewonnene Beweise im internationalen Zivilprozess- und Schiedsrecht in der Schweiz, in: Mélanges en l'honneur de Pierre Tercier,

evidence is admissible: (a) testimony; (b) physical records; (c) inspection; (d) expert opinion; (e) written statements (usually by authorities); (f) questioning and statement of the parties.

37. The Notebooks and Transcripts which MGI is seeking in these 1782 proceedings qualify as physical records and testimony and are thus admissible.

38. Accordingly, the Federal Patent Court will be receptive to the evidence sought here.

## VI. ACCESS TO COURT RECORDS UNDER SWISS LAW

39. Petitioners will make every reasonable effort under Swiss law to keep information provided by the Respondent pursuant to this Section 1782 Application confidential in the Swiss Proceedings.

40. According to Article 53 of the Swiss Civil Procedure Code ("CPC"), only the parties to the proceeding have the right to consult the case files and to obtain copies thereof. The court files are thus not publicly available. Furthermore, pursuant to Article 156 of the CPC "[t]he court shall take appropriate measures to ensure that taking evidence does not infringe the legitimate interests of any parties or third party, such as business secrets".

41. The Swiss court will issue a written judgment which will be served upon the parties and which will also be made publicly available. To the extent that the judgment reveals confidential information of the Respondent produced through this 1782 Application, Petitioners agree to cooperate with Illumina Cambridge in objecting to the disclosure of any confidential information of the Respondent produced pursuant to this 1782 Application. Petitioners will join any request by Illumina Cambridge and the Respondent in the Swiss Proceedings that is necessary to protect any confidential information produced through this 1782 Application, such as requesting the Swiss court to redact the appropriate portions of its

---

Basel 2008, page 935; Roberto Dallafior, Prozessieren im internationalen Verhältnis, in: ZPR! Die Kunst des Prozessierens, SJWZ April 25, 2019, page 9 et seq.

written judgment prior to its publication or any other measures Illumina Cambridge may request to protect the confidentiality of information produced through this 1782 Application.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 under the laws of the United States that the foregoing is true and correct.

Executed on September 1, 2020
in Zurich, Switzerland.

_____
Thierry Calame