# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

IN RE APPLICATION OF LATVIA MGI
TECH SIA ET AL FOR AN ORDER TO
TAKE DISCOVERY FOR USE IN A
FOREIGN PROCEEDING PURSUANT
TO 28 U.S.C. § 1782

Case No. _____

## [PROPOSED] ORDER

Upon consideration of the Application And Petition For An Order To Conduct Discovery For Use In Foreign Proceedings Pursuant To 28 U.S.C. § 1782 (the "Petition"), submitted by Latvia MGI Tech SIA ("Latvia MGI"), MGI Tech Co., Ltd. ("MGI Tech"), MGI International Sales Co., Ltd ("MGI International"), BGI Complete Genomics Hong Kong Co., Ltd. ("BGI Complete"), BGI-HongKong Co., Limited ("BGI-HongKong"), BGI Tech Solutions (HongKong) Co. ("BGI Tech"), BGI Health (HK) Company Limited ("BGI Health"), Genoks Teknoloji Saghk Bilisim Turizm Hiz. Endiistriyel Makine Elektrik Elektronik Ithalat Ihracat San. Tic. Ltd. Sti. ("Genoks"), Labema Oy ("Labema"), Comercial Rafer, SL ("Rafer"), BGI Europe A/S ("BGI Europe"), and Witec AG ("Witec") (collectively, "Petitioners") and all papers submitted in support thereof, this Court finds that (i) the statutory requirements of 28 U.S.C. § 1782 are satisfied, and (ii) the factors identified by the United States Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), weigh in favor of granting the Petition.

It is therefore ORDERED that

(a)     the Petition is granted;

(b)     Petitioners are authorized to serve the subpoena annexed as Exhibit 2 to the declaration of Joseph Milowic III ("Subpoena") upon Illumina, Inc. ("Respondent");

(c)     Respondent is directed to respond to such Subpoena pursuant to the Federal Rules of Civil Procedure and the Local Civil Rules of this Court; and

(d)     Petitioners are permitted to share any discovery obtained pursuant to this Order with their co-parties in the foreign proceedings.

(e)     Petitioner is authorized to use any evidence obtained pursuant to the Subpoena in any additional or pending foreign proceeding arising out of the same facts, events, patents, or transactions underlying Petitioner's Application.

**SO ORDERED.**

Date: _____, 2020

_____
UNITED STATES DISTRICT JUDGE

# EXHIBIT 2

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
for the
Northern District of California

| LATVIA MGI TECH SIA ET AL | ) | |
|---|---|---|
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| ILLUMINA, INC. | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:                                                       Illumina, Inc.

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material:

| Place: Quinn Emanuel Urquhart & Sullivan, LLP<br>50 California Street, 22nd Floor<br>San Francisco, California 94111 | Date and Time:<br><br>09/21/2020 5:00 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

        The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:  _____

| *CLERK OF COURT* | | |
|---|---|---|
| | OR | |
| | | /s/ David Bilsker |
| _____ | | _____ |
| *Signature of Clerk or Deputy Clerk* | | *Attorney's signature* |

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*        Petitioners
_____, who issues or requests this subpoena, are:

David Bilsker; QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor, San Francisco, California 94111; davidbilsker@quinnemanuel.com; (415) 875-6600

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

   ☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

   ☐ I returned the subpoena unexecuted because: _____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A) *Appearance Not Required.*** A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B) *Objections.*** A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A) *When Required.*** On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B) *When Permitted.*** To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE APPLICATION OF LATVIA MGI TECH SIA ET AL FOR AN ORDER TO TAKE DISCOVERY FOR USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782 | Case No. _____ |

**ATTACHMENT B**

The United States District Court for the Northern District of California has authorized Petitioners to serve this subpoena upon you in support of (i) foreign actions brought by you and your affiliates asserting patent infringement and other claims and (ii) foreign nullity proceedings challenging the validity and/or enforceability of those patents and/or claims brought by the Petitioners.

**DOCUMENT REQUESTS**

**DOCUMENT REQUEST NO. 1.**

All deposition transcripts of any named inventor in any proceeding regarding United States patents claiming azidomethyl as a 3' blocking agent or related to the Asserted Illumina Patents, including but not limited to:

   a.   The transcript from the deposition of Colin Barnes, taken January 6, 2011 in *Life Techs. Corp. v. Illumina, Inc.*, No. 09-706 (D. Del.) and all exhibits thereto;

1

b. The transcript from the deposition of Colin Barnes, taken March 13, 2013 in *Illumina Inc., et al v. Complete Genomics Inc., et al.*, No. 3:12-cv-01465 (S.D. Cal.) and all exhibits thereto;

c. The transcript from the deposition of Xiaohai Liu, taken March 20, 2013 in *The Trustees of Columbia University et al v. Illumina Inc., et al*, No. 12-376 (D. Del.) and all exhibits thereto;

d. The transcript from the deposition of Xiaohai Liu, taken August 20, 2020 in the First California Proceeding and the Second California Proceeding and all exhibits thereto;

e. The transcripts of any future depositions of Shankar Balasubramanian, Colin Barnes, Joseph Brennan, John Milton, Silke Ruediger, Mark Smith, Harold Swerdlow, or Xiaolin Wu which relate to the Asserted Illumina Patents or any other patents claiming azidomethyl as a 3' blocking agent, and all exhibits thereto, including but not limited to any depositions of those individuals in the First California Proceeding, the Second California Proceeding, or the Delaware Proceeding; and

f. Any other deposition transcripts, and all exhibits thereto, that have been produced or are due to be produced by Illumina in pending or future depositions in the First California Proceeding, the Second California Proceeding, or the Delaware Proceeding.

**DOCUMENT REQUEST NO. 2.**

All Documents, Communications, and things reflecting, referring to, or relating to the conception and reduction to practice of the inventions claimed in the Asserted Illumina Patents

2

that have been produced or are due to be produced by Illumina in the First California Proceeding, the Second California Proceeding, or the Delaware Proceeding, including but not limited to laboratory notebooks, inventor notebooks, experimental data, research summaries, memoranda, presentations, business plans, correspondence, meeting minutes, invention disclosures, computer data, internal invention notices, as well as the first written description or disclosure of such subject matter.  For the avoidance of doubt, this includes, but is not limited to:

      a.   Any documents produced in the First California Proceeding, the Second California Proceeding, or the Delaware Proceeding, identifying the experiments described in [0154]-[0161] of EP '578, and any records of the experiments shown in Figures 5-7 and referred to in the corresponding Figure legends in [0048] of EP '578 which correspond to Figures 5-7 of United States Patent Nos. 7,771,973 and 7,541,444 which are the subject of Case No. in the action pending between Illumina and BGI in the Northern District of California;

      b.   Any records of the experiments described in the documents D28-D30, which were relied upon by Illumina Cambridge in the EPO Opposition Proceedings relating to EP '578.

**INSTRUCTIONS**

1.    Each Request extends to all Documents in your possession, custody, or control or in the possession, custody, or control of anyone acting on your behalf.  A Document is in your possession, custody, or control if it is in your physical custody or if it is in the physical custody of any person or entity and you (i) own such Document in whole or in part; (ii) have a right (by contract, statute, or otherwise) to use, inspect, examine, or copy such Document on any terms; (iii) have an understanding, express or implied, that you may

use, inspect, examine, or copy such Document on any terms; or (iv) have, as a practical matter, been able to use, inspect, examine or copy such Document when you sought to do so.

2.   If you know the location of any requested Document and do not produce the Document on the ground that the Document is not in your possession, custody, or control, you shall identify the Document and identify the person who you believe has possession, custody, or control of the Document.

3.   If you are unaware of the existence of any Documents responsive to a particular Request, your response should expressly indicate so.

4.   The original of each Document requested herein shall be produced together with any drafts, revisions, or copies of the same that bear any mark or notation not present in the original or that otherwise differ from the original.

5.   All Documents shall be produced in their entirety without redaction (other than redactions for privilege) and should include all attachments and enclosures. Documents that are attached to each other or are in the same family should not be separated.

6.   You must state whether you will produce Documents as they are kept in the usual course of business or organized and labeled to correspond with the categories in the Request.

7.   The response to each Request shall state, with respect to each item or category, that production will be made or inspection will be permitted as requested, unless the Request is objected to, in which event the reason(s) for objection shall be stated.  If objection is made to part of a Request, the part shall be specified; Documents responsive to the remainder of the Request shall be produced.  Any such objection shall not extend the time within which you must otherwise respond to a Request to which no specific objection has

4

been made.

8.    With respect to any Documents or information withheld on a claim of attorney-client privilege, the work product doctrine, or any other applicable privilege, you shall provide an express statement of the asserted privilege that includes the following information: (i) the applicable date; (ii) the identity of the author(s), including (but not limited to) the business or legal title(s) or position(s); (iii) the identity of the recipient(s), including (but not limited to) business or legal title(s) or position(s); (iv) the subject matter of the Document; (v) the identity of all other persons who received copies; and (vi) the specific factual basis of the claimed privilege or other protection from discovery.

9.    The use of the singular form of a noun includes the plural form, and vice versa.

10.   The connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the Request all responses that might otherwise be construed to be outside of its scope.

11.   The terms "each," "any," and "all" shall be construed to mean "each and every."

12.   Each Request shall operate and be construed independently and, unless otherwise stated, no request limits the scope of any other Request.

13.   In responding to any of these Requests, if you encounter any ambiguity in construing either the Requests or a definition or instruction, set forth the mattered deemed ambiguous and the construction used in answering the Request. These requests are to be liberally construed, and you should resolve any doubts about whether a Document is responsive to these Requests in favor of production.

14.   These Requests shall be deemed continuing in nature, and supplemental responses and Document production are required if You, directly or indirectly, obtain further

5

information after its initial responses and Document production.

15.     Unless the Request explicitly states otherwise, the date range for each Request shall be the period beginning January 2013, and continuing through the present.

**DEFINITIONS**

16.     "**Asserted Illumina Patents**" means the following European, Turkish, and UK patents:

    I.       European Patents ("EPs")

          A.    EP 1 530 578 ("EP '578")

          B.    EP 3 002 289 ("EP '289")

          C.    EP 1 828 412 ("EP '412")

          D.    EP 2 021 415 ("EP '415")

          E.    EP 3 578 433 ("EP '433")

          F.    EP 3363809 B1 (the "EP '809")

    II.      Turkish Patents

          A.    TP 2018 04580 ("TP '4580")

    III.    UK Patents

          A.    EP (UK) 1 664 287 B1 ("EP '287")

    IV.    Hong Kong Patents

          A.    Hong Kong Standard Patent HK 1253509 ("'HK 509")

17.     "**Communication**" means any conveyance of information by any means, including but not limited to in writing, via email, via instant messaging software, or via telephone. Where a Communication is via telephone, you should produce Documents such as telephone records sufficient to show the occurrence of the Communication.

18.  "**Delaware Proceeding**" shall mean *Complete Genomics, Inc. v. Illumina, Inc.*, No. 1:19-cv-00970-MN (D. Del.)

19.  "**Document**" shall have the full meaning ascribed to it by Rule 34(a) of the Federal Rules of Civil Procedure, and in particular includes (but is not limited to) every writing or record of every type and description, including letters, correspondence, diaries, transcripts, notebooks, memoranda, tapes, electronic data or storage, stenographic or handwritten notes, studies, publications, books, data, pamphlets, pictures, films, video recordings, reports, financial statements, ledgers, applications, emails, instant messages, text messages, or however produced or reproduced, in your possession, custody, or control.  "Document" also includes all copies and drafts of every writing or record when the copy or draft is not identical to the original. "Document" includes electronically-stored information.

20.  "**EPO Opposition Proceedings**" shall mean the various proceedings initiated by certain of the Petitioners before the European Patent Office challenging the validity of the Asserted Illumina Patents.

21.  "**First California Proceeding**" shall mean *Illumina, Inc., et al. v. BGI Genomics Co., LTD.*, No. 3:19-cv-03770-WHO (N.D. Cal.).

22.  "**Illumina Cambridge**" shall mean Illumina Cambridge Ltd., its respective principals, affiliates, agents, employees, officers, directors, members, partners, owners, attorneys, advisors, accountants, contractors, subsidiaries, parents, or any other person acting on their behalf, under their direction, at their behest, for their benefit, or under their control.

23.  "**Petitioners**" shall mean Latvia MGI Tech SIA; MGI Tech Co., Ltd.; MGI International Sales Co., Ltd.; BGI Complete Genomics Hong Kong Co., Ltd.; BGI-HongKong Co.,

Limited; BGI Tech Solutions (HongKong) Co.; BGI Health (HK) Company Limited; Genoks Teknoloji Saghk Bilisim Turizm Hiz. Endiistriyel Makine Elektrik Elektronik Ithalat Ihracat San. Tic. Ltd. Sti.; Labema Oy; Comercial Rafer, SL; BGI Europe A/S, and Witec AG along with their respective principals, affiliates, agents, employees, officers, directors, members, partners, owners, attorneys, advisors, accountants, contractors, subsidiaries, parents, or any other person acting on their behalf, under their direction, at their behest, for their benefit, or under their control.

24. **"Second California Proceeding"** shall mean *Illumina, Inc. et al. v. BGI Genomics Co., Ltd. et al.,* No. 3:20-cv-01465 (N.D. Cal.).

# EXHIBIT 3



## About BGI

## Curiosity, Application of Knowledge, Working for the Betterment of Mankind.

## Introduction

Founded in 1999, BGI is one of the world's leading life science and genomics organizations. BGI's mission is to use genomics to benefit mankind and to be a leader in the era of life sciences. BGI follows a genomics development model of "research, production and application". With businesses in more than 100 countries and regions around the world, BGI has established cooperation and partnerships with thousands of different organizations across multi-disciplinary research areas including medical health, resource conservation and judicial services. At the same time, BGI provides equipment, technical support and solutions for the needs of national economies and people's livelihoods, such as precision medicine and precision health. BGI is committed to applying its genetic and technological achievements to real world settings in order to realize the dream of trans-omics for a better life.

**Mission - Trans-omics for a better life.**
**Vision - To be a world leader in the age of life sciences.**
**Core Values – Curiosity, Application of Knowledge, Working for the Betterment of Mankind.**

Introduction-BGI Group Official Website



## About BGI



## BGI Research

## BGI College

## China National GeneBank

## GigaScience

## BGI Genomics

## MGI



## About BGI

## BGI Agro

## BGI Health





Introduction-BGI Group Official Website



About BGI

# EXHIBIT 4

**Colin Steele**

| | |
|---|---|
| **From:** | Theodore Folkman <ted@folkman.law> |
| **Sent:** | Thursday, June 25, 2020 5:54 PM |
| **To:** | Joseph Milowic III |
| **Cc:** | Minyao Wang (mwang@hechtpartnersllp.com) |
| **Subject:** | Some thoughts for tomorrow |
| **Attachments:** | Letter to K Scott 6-2-20.pdf |

---

**[EXTERNAL EMAIL]**

---

Joe, here is a list of the issues I'm hoping we can discuss tomorrow:

1. I'd like to follow up on my letter to Katie Scott of 6/2 (see attached), both with regard to Switzerland and more generally. I'm hoping you can provide a status update on this.

2. We envision a 30(b)(6) deposition that takes place in two discrete parts: first, a "technical" deposition covering topics 4 to 13, and second, a "commercial" deposition covering topics 1 to 3. I'd like to start planning out some dates, with the understanding that you'd need to clear them with your likely witnesses.

3. As you know, in civil law jurisdictions it often is necessary to bring separate actions in circumstances in which, in common law jurisdictions, a party would simply bring a motion in the existing action. Illumina's counsel in Denmark are contemplating bringing a separate proceeding against the existing Danish defendant and would like to correspond with BGI's Danish counsel about certain documents that your clients have produced. If they do in the end bring the new proceeding, they would like to be able to reference the documents in the new proceeding, subject of course to the terms in the protective order regarding requesting confidential treatment. Because the protective order defines "Litigation" with specificity, and out of an abundance of caution, I would like to have your clients' agreement to allow this, and if your clients are not in agreement, then I would like to discuss the logistics of bringing the issue to the attention of the judge for a prompt decision.

4. In previous meet-and-confers with Arnold & Porter, I raised the issue of some of your clients' interrogatory responses, in particular the response to the first set of interrogatories (for your reference, ECF No. 29-13 in case no. 19-3770), which we believe are responsive to the document requests in the 1782 action. I request that your clients agree to produce a copy of those answers for use in the Foreign Actions.

5. Illumina may bring additional actions in the countries where the Foreign Actions that were the subject of the 1782 application are pending (in addition to the potential Danish action mentioned above). I would like to discuss with you modifying the protective order to permit the use of the materials produced in those potential actions.

6. In light of our earlier correspondence regarding translators, I may want to raise with you a proposed modification of the protective order to permit us more easily to obtain translations of the Chinese-language documents produced.

Looking forward to our discussion,

Ted

**Theodore J. Folkman**
FOLKMAN LLC
53 State Street, Suite 500
Boston, MA 02109 USA
Tel. +1 (617) 219-9664

1

www.folkman.law

This email message contain information that may be confidential or may be protected by the attorney/client privilege or another privilege. It is meant only for the intended recipient. If you have received the email in error, please notify me by replying to this message and delete the message. Email is, in general, an insecure method of communication. If you need to communicate with the sender in a secure way, please contact the sender to make arrangements. Nothing in this email is intended to constitute an electronic signature under the Electronic Signatures in Global and National Commerce Act or the Massachusetts Uniform Electronic Transactions Act or any similar law, unless the email expressly states otherwise.

Please consider the environment before printing this email.

# EXHIBIT 5

# Office locations

Contact Us:

## Commercial Offices – USA

**Illumina, Inc.**
Worldwide Headquarters

5200 Illumina Way
(formerly 5200 Research PI)
San Diego, CA 92122 USA

1.858.202.4500 (tel)
1.858.202.4766 (fax)

**Illumina, Inc.**
i3 Campus

4795 Executive Dr
San Diego, CA 92121

1.858.202.4500 (tel)
1.858.202.4766 (fax)

**Illumina Madison**

524 Genomic Drive
Madison, WI 53719

1.608.442.6100 (tel)

**Illumina Foster City**

200 Lincoln Centre Drive
Foster City, CA 94404

1.650.376.9000 (tel)

**Illumina Baltimore**

801 W. Baltimore St, Suite 500
Baltimore, MD 21201

1.667.260.5785 (tel)

## Commercial Offices – International

**Illumina Australia and New Zealand**
Nursing Association Building

Level 3, 535 Elizabeth Street
Melbourne, Vic 3000

+61 (0)3.9212.9900 (tel)
+61 (0)3.9212.9901 (fax)
1800 775 688 (tel – Free call Australia)
0800 451 650 (tel – toll free New Zealand)

**Illumina Germany**
Illumina Solutions Center Berlin

Atrium Tower
Eichhornstraße 3
10 785 Berlin
Germany

**Illumina China**
Illumina Trading (Shanghai) Co., Ltd.

12F, Building #23, 1999 Yishan Road
Shanghai Business Park Phase III,
Shanghai 200233, China

+86.21.6032.1066 (tel)
+86.21.6090.6279 (fax)
www.illumina.com.cn

**Illumina China**
Beijing Branch

Illumina Trading (Shanghai) Co., Ltd.

Rm. 1103A, Bldg. H, Phoenix Place
No. A5 Shuguanpxili, Chaoyang District
Beijing 100028, P.R. China

+86.10.8455.4866 (tel)
+86.10.8455.4855 (fax)
www.illumina.com.cn

**Illumina France**
Illumina Solutions Center Paris

Genopole Campus 1, Bât. 7
5 rue Henri Desbruères
91 000 Evry
France

+33 805 102 193 (tel)

**Illumina Japan**

Mita Bellju Building 22F
5-36-7 Shiba, Minato-ku
Tokyo 108-0014,
Japan

+81.3.4578.2800 (tel)
+81.3.4578.2810 (fax)
jp@illumina.com

**Illumina Latin America**

Alameda Santos, 787 – suite 62
Sao Paulo, Brazil 01419-000

+55 11 3500 3900 (tel)
+55 11 3500 3950 (fax)

**Illumina Netherlands**

Freddy van Riemsdijkweg 15
5657 EE Eindhoven
The Netherlands

+31(0) 40-2064500 (tel)
+31(0) 40-2064529 (fax)

**Illumina United Kingdom**
Great Abington

Illumina Centre
19 Granta Park, Great Abington
Cambridge, Cambridgeshire
CB21 6DF, United Kingdom

+44 (0) 1223 408000 (tel)

Office Locations | Contact Information

+44 (0) 1223 408000 (tel)
+44 (0) 1223 408001 (fax)

**Illumina Singapore**

11 Biopolis Way, #08-05 Helios
Singapore 138667

+65.6773.0188 (tel)
1 800 579 2745 (tel – toll free)
+65.6774.0389 (fax)

**Illumina Canada**

400-725 Granville Street
Vancouver, British Columbia
Canada, V7Y 1G5

1.858.202.4500
1.858.202.4766 (fax)

**Illumina Korea**

14F KTB Building
66 Yeoidaero Yeongdeungpo-gu
Seoul Korea

02-740-5300 (tel)
02-786-8368 (fax)

# Manufacturing, Research and Development

**Illumina Hayward**

25861 Industrial Blvd.
Hayward, CA 94545 USA

510.670.9300 (tel)
510.670.9302 (fax)

**Illumina Singapore**

Manufacturing only

29 Woodlands Industrial Park E1
North Tech, Lobby 3, #02-13/18
Singapore 757716

+65.6579.2600 (tel)
+65.6579.2601 (fax)

Legal Entity and Address Listing >



**Innovative technologies**

At Illumina, our goal is to apply innovative technologies to the analysis of genetic variation and function, making studies possible that were not even imaginable just a few years ago. It is mission critical for us to deliver innovative, flexible, and scalable solutions to meet the needs of our customers. As a global company that places high value on collaborative interactions, rapid delivery of solutions, and providing the highest level of quality, we strive to meet this challenge. Illumina innovative sequencing and array technologies are fueling groundbreaking advancements in life science research, translational and consumer genomics, and molecular diagnostics.

**For Research Use Only. Not for use in diagnostic procedures (except as specifically noted).**

© 2020 Illumina, Inc. All rights reserved.

All trademarks are the property of Illumina, Inc. or their respective owners.
For specific trademark information, see www.illumina.com/company/legal.html.

Privacy Policy

# EXHIBIT 6

1

**Pierce Bainbridge Beck Price & Hecht LLP**
Brian J. Dunne (SBN 275689)

2
355 S. Grand Ave., 44th Floor
Los Angeles, California 90071

3
Tel: (213) 262-9333

4
bdunne@piercebainbridge.com

**Pierce Bainbridge Beck Price & Hecht LLP**

5
Theodore J. Folkman (*pro hac vice* pending)
One Liberty Square

6
Boston, MA 02109

7
(617) 313-7401
tfolkman@piercebainbridge.com

8

**Pierce Bainbridge Beck Price & Hecht LLP**

9
Minyao Wang (*pro hac vice* pending)
277 Park Ave., 45th Floor

10
New York, NY 10172

11
(212) 484-9866
mwang@piercebainbridge.com

12

*Attorneys for Applicant Illumina Cambridge Ltd.*

13

**Weil, Gotshal & Manges LLP**
Edward R. Reines (SBN 135960)
edward.reines@weil.com
Derek C. Walter (SBN 246322)
derek.walter@weil.com
Silicon Valley Office
201 Redwood Shores Parkway
Redwood Shores, CA 94065
Telephone: (650) 802-3000

FILED

SEP 06 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT

14
FOR THE NORTHERN DISTRICT OF CALIFORNIA

JSC

15

16
In re APPLICATION OF ILLUMINA
CAMBRIDGE LTD. for issuance of

17
subpoenas under 28 U.S.C. § 1782

18

19

20

CV 19 80 215 MISC

Civ. No.

**CERTIFICATION OF INTERESTED
ENTITIES OR PERSONS PURSUANT
TO FED. R. CIV. P. 7.1 AND CIV. L.
R. 3-16**

21
Pursuant to Federal Rule of Civil Procedure 7.1 and Northern District of California Civil

22
Local Rule 3-16, Plaintiff Illumina Cambridge Ltd. ("Illumina Cambridge") certifies that the

23
following listed persons, associations of persons, firms, partnerships, corporations (including

24

25
parent corporation) or other entities (i) have a financial interest in the subject matter in

26
controversy or in a party to the proceeding, or (ii) have a non-financial interest in that subject

27

28
**CERTIFICATION OF INTERESTED ENTITIES OR
PERSONS PURSUANT TO FED. R. CIV. P. 7.1 AND CIV. L.
R. 3-16**

2847554

1  matter or in a party that could be substantially affected by the outcome of this proceeding: none.

2  Illumina Cambridge hereby certifies that Illumina Inc. owns 100% of stock in Illumina

3  Cambridge.

4  Dated: September 6, 2019                    Respectfully submitted,

5                                              ILLUMINA CAMBRIDGE LTD.

6                                              By its attorneys:

7                                              /s/ Brian J. Dunne
8                                              Brian J. Dunne (CA Bar No. 275689)
                                               PIERCE BAINBRIDGE BECK PRICE & HECHT,
9                                              LLP
                                               355 S. Grand Ave., 44th Floor
10                                             Los Angeles, CA 90071
11                                             (213) 262-9333
                                               bdunne@piercebainbridge.com
12
13                                             Theodore J. Folkman (*pro hac vice* pending)
                                               PIERCE BAINBRIDGE BECK PRICE & HECHT,
14                                             LLP
                                               One Liberty Square, 13th Flr.
15                                             Boston, MA 02109
                                               (617) 313-7401
16                                             tfolkman@piercebainbridge.com

17                                             Minyao Wang (*pro hac vice* pending)
18                                             PIERCE BAINBRIDGE BECK PRICE & HECHT,
                                               LLP
19                                             277 Park Ave., 45th Floor
                                               New York, NY 10172
20                                             (212) 484-9866
                                               mwang@piercebainbridge.com
21
22                                             Edward R. Reines (CA Bar No. 135960)
                                               Derek C. Walter (CA Bar No. 246322)
23                                             WEIL, GOTSHAL & MANGES LLP
                                               201 Redwood Shores Parkway
24                                             Redwood Shores, CA 94065
                                               Telephone: (650) 802-3000
25                                             edward.reines@weil.com
                                               derek.walter@weil.com
26

27

28  **CERTIFICATION OF INTERESTED ENTITIES OR
    PERSONS PURSUANT TO FED. R. CIV. P. 7.1 AND CIV. L.
    R. 3-16**

2847554

# EXHIBIT 7

# Paving the way for the future of genomics

View Video

## Driving Innovation

As a startup, Illumina aspired to transform human health. Our initial products enabled researchers to explore DNA at an entirely new scale, helping them create the first map of gene variations associated with health, disease, and drug response. Every breakthrough opened up a new world, and showed us how much further there is to go.





## Finding Answers

While the rate of progress is accelerating exponentially, we are only beginning to understand the clinical significance of the genome. What causes a cancer cell to mutate? What is the origin of a puzzling disease? Is it possible to prevent the next outbreak? Or safeguard the world's food supply? These are just a few of the challenges that inspire us to push the boundaries of our imagination.

## Making a Difference Now

Today we are a global leader in genomics – an industry at the intersection of biology and technology. At the most fundamental level, we enable our customers to read and understand genetic variations. We strive to make our solutions increasingly simple, more accessible, and always reliable. As a result, discoveries that were unimaginable even a few years ago are now becoming routine – and are making their way into patient treatment.

## Empowering a Healthy Future

We now have the ability to sequence at an unprecedented scale. Collectively, this will give us a much deeper understanding of genetics than ever before. We will begin to truly unlock the power of the genome. These advances will trigger a fundamental shift in healthcare and beyond. Medicine will continue to become more preventive and more precise. We will be healthier, longer. We have only just begun.

About Us | A global leader in genomics



## Innovative technologies

At Illumina, our goal is to apply innovative technologies to the analysis of genetic variation and function, making studies possible that were not even imaginable just a few years ago. It is mission critical for us to deliver innovative, flexible, and scalable solutions to meet the needs of our customers. As a global company that places high value on collaborative interactions, rapid delivery of solutions, and providing the highest level of quality, we strive to meet this challenge. Illumina innovative sequencing and array technologies are fueling groundbreaking advancements in life science research, translational and consumer genomics, and molecular diagnostics.

For Research Use Only. Not for use in diagnostic procedures (except as specifically noted).

© 2020 Illumina, Inc. All rights reserved.

All trademarks are the property of Illumina, Inc. or their respective owners.
For specific trademark information, see www.illumina.com/company/legal.html.

Privacy Policy

# EXHIBIT 8

# Companies House

Companies House does not verify the accuracy of the information filed
(http://resources.companieshouse.gov.uk/serviceInformation.shtml#compInfo)

ILLUMINA CAMBRIDGE LIMITED

Company number **03625145**

- Officers
- Persons with significant control (https://beta.companieshouse.gov.uk/company/03625145/persons-with-significant-control)

## Filter officers

☐
Current officers

Apply filter

## 34 officers / 30 resignations

### DADSWELL, Charles

Correspondence address  **5200 Illumina Way, San Diego, Ca 92122, United States**

Role Active  **Secretary**

Appointed on  **22 April 2013**

Nationality  **British**

### DOWDY, Paula Lynn

Correspondence address
**Illumina Cambridge Limited, Chesterford Research Park, Little Chesterford, Near Saffron Walden, Essex, United Kingdom, CB10 1XL**

Role Active  **Director**

Date of birth  **April 1965**

Appointed on  **24 October 2016**

Nationality  **American**

Country of residence  **England**

Occupation  **None**

### EDWARDS, Rebecca Jane

Correspondence address  **19 Granta Park, Great Abington, Cambridge, Cambridgeshire, England, CB21 6DF**

Role Active  **Director**

Date of birth  **June 1980**

Appointed on  **8 October 2018**

Nationality  **British**

Country of residence  **England**

Occupation  **Director, Hr**

ILLUMINA CAMBRIDGE LIMITED - Officers (free information from Companies House)

## ROBINSON, Mark James

Correspondence address  **19 Granta Park, Great Abington, Cambridge, Cambridgeshire, England, CB21 6DF**

Role Active  **Director**

Date of birth  **December 1975**

Appointed on  **4 November 2019**

Nationality  **British**

Country of residence  **England**

Occupation  **Vp, Finance**

## ABELL, James Foster

Correspondence address  **9 Portland Road, Oxford, Oxfordshire, OX2 7EZ**

Role Resigned  **Secretary**

Appointed on  **12 October 1998**

Resigned on  **20 November 2001**

## CABOU, Christian

Correspondence address  **11009 Corte Mar De Delfinas, San Diego, California 92130, U S A, FOREIGN**

Role Resigned  **Secretary**

Appointed on  **26 January 2007**

Resigned on  **22 April 2013**

## PALMER, Leigh Graham

Correspondence address  **Burnt House Farm, Dublin Road Rishangles, Eye, Suffolk, IP23 7QB**

Role Resigned  **Secretary**

Appointed on  **20 November 2001**

Resigned on  **26 January 2007**

## MITRE SECRETARIES LIMITED

Correspondence address  **Mitre House, 160 Aldersgate Street, London, EC1A 4DD**

Role Resigned  **Nominee Secretary**

Appointed on  **2 September 1998**

Resigned on  **12 October 1998**

## ALLEN, Stephen David

Correspondence address  **Cheppings, Hampden Road, Great Missenden, Buckinghamshire, HP16 0JL**

Role Resigned  **Director**

Date of birth  **December 1957**

Appointed on  **27 January 2004**

Resigned on  **26 January 2007**

8/2/2020                    ILLUMINA CAMBRIDGE LIMITED - Officers (free information from Companies House)

Nationality   **English**

Country of residence   **United Kingdom**

Occupation   **General Manager**

## BALASUBRAMANIAN, Shankar, Dr

Correspondence address   **207 Hills Road, Cambridge, Cambridgeshire, CB2 2RN**

Role Resigned   **Director**

Date of birth   **September 1966**

Appointed on   **12 October 1998**

Resigned on   **26 January 2007**

Nationality   **British**

Occupation   **University Lecturer**

## BERRIMAN, John Edward

Correspondence address   **Blackrock Manor Road, Goring, Reading, Berkshire, RG8 9DP**

Role Resigned   **Director**

Date of birth   **April 1948**

Appointed on   **12 October 1998**

Resigned on   **8 June 2004**

Nationality   **British**

Country of residence   **United Kingdom**

Occupation   **Consultant**

## CARTHY, Mark

Correspondence address   **21 Stone Road, Belmont, Ma 02478, Usa**

Role Resigned   **Director**

Date of birth   **August 1960**

Appointed on   **20 September 2001**

Resigned on   **19 April 2005**

Nationality   **American**

Occupation   **Venture Capitalist**

## COMPTON, Richard Alan

Correspondence address   **Chesterford Research Park, Little Chesterford, Saffron Walden, Essex, CB10 1XL**

Role Resigned   **Director**

Date of birth   **November 1969**

Appointed on   **29 April 2015**

Resigned on   **3 May 2016**

Nationality   **British**

Country of residence   **England**

Occupation  **Vice President And General Manager**

## DANIEL, Tom James

Correspondence address  **The Laundry Cottage, Ashton, Northants, PE8 5LE**

Role Resigned  **Director**

Date of birth  **February 1965**

Appointed on  **20 September 2001**

Resigned on  **19 April 2005**

Nationality  **British**

Occupation  **Venture Capitalist**

## DESOUZA, Francis

Correspondence address  **5200 Illumina Way, San Diego, 92122 California, Uk**

Role Resigned  **Director**

Date of birth  **February 1970**

Appointed on  **29 April 2015**

Resigned on  **13 April 2017**

Nationality  **American**

Country of residence  **Usa**

Occupation  **President Of Illumina Way**

## ELETR, Sam, Dr

Correspondence address  **94 Norwood Avenue, Kensington, California 94707, Usa**

Role Resigned  **Director**

Date of birth  **March 1939**

Appointed on  **29 January 2002**

Resigned on  **30 July 2004**

Nationality  **American**

Occupation  **Director**

## FLATLEY, Jay

Correspondence address  **6725 Calle Ponte Bella, Rancho Santa Fe, California 92067, United States Of America**

Role Resigned  **Director**

Date of birth  **November 1952**

Appointed on  **26 January 2007**

Resigned on  **29 April 2015**

Nationality  **American**

Country of residence  **Usa**

Occupation  **President & C E O Illumina Inc**

ILLUMINA CAMBRIDGE LIMITED - Officers (free information from Companies House)

## HAUSER, Hermann Maria

Correspondence address  **3 Newnham Walk, Cambridge, Cambridgeshire, CB3 9HQ**

Role Resigned   **Director**

Date of birth   **October 1948**

Appointed on   **30 July 2004**

Resigned on   **19 April 2005**

Nationality   **Austrian**

Country of residence   **England**

Occupation   **Venture Capitalist**

## HENRY, Christian Ogren

Correspondence address  **455 Legion Street, Laguna Beach, 92651 California, U.S.A.**

Role Resigned   **Director**

Date of birth   **February 1968**

Appointed on   **20 December 2007**

Resigned on   **13 April 2017**

Nationality   **United States**

Country of residence   **Usa**

Occupation   **Senior Vp & Cfo Illumina Inc**

## JENNINGS, Richard Charles, Dr

Correspondence address  **110 Thornton Road, Girton, Cambridge, CB3 0ND**

Role Resigned   **Director**

Date of birth   **April 1948**

Appointed on   **12 October 1998**

Resigned on   **20 September 2001**

Nationality   **British**

Country of residence   **England**

Occupation   **Director**

## KLENERMAN, David

Correspondence address  **58 Maids Causeway, Cambridge, CB5 8DD**

Role Resigned   **Director**

Date of birth   **September 1959**

Appointed on   **12 October 1998**

Resigned on   **20 September 2001**

Nationality   **British**

Occupation   **University Lecturer**

## LLOYD HARRIS, Quentin Lionel Genghis, Dr

Correspondence address  38 Jermyn Street, London, SW1Y 6DN

Role Resigned  **Director**

Date of birth  **April 1957**

Appointed on  **8 June 2004**

Resigned on  **19 April 2005**

Nationality  **British**

Occupation  **Investment Manager**

## MCCOOKE, Nicholas John

Correspondence address  **Kellowdene 62 North Park, Gerrards Cross, Buckinghamshire, SL9 8JR**

Role Resigned  **Director**

Date of birth  **July 1953**

Appointed on  **24 January 2001**

Resigned on  **9 August 2004**

Nationality  **British**

Country of residence  **United Kingdom**

Occupation  **Executive**

## MCGRATH, Ronald James

Correspondence address  **Chesterford Research Park, Little Chesterford, Saffron Walden, Essex, CB10 1XL**

Role Resigned  **Director**

Date of birth  **June 1968**

Appointed on  **13 April 2017**

Resigned on  **22 January 2018**

Nationality  **American**

Country of residence  **America**

Occupation  **Vice President Finance**

## NEL, Andre Jacques

Correspondence address  **19 Granta Park, Great Abington, Cambridge, Cambridgeshire, England, CB21 6DF**

Role Resigned  **Director**

Date of birth  **January 1972**

Appointed on  **29 April 2015**

Resigned on  **4 November 2019**

Nationality  **South African**

Country of residence  **United States**

Occupation  **Vp Finance, Illumina**

ILLUMINA CAMBRIDGE LIMITED - Officers (free information from Companies House)

## ORPIN, Timothy Sean

Correspondence address **Chesterford Research Park, Little Chesterford, Saffron Walden, Essex, CB10 1XL**

Role Resigned **Director**

Date of birth **February 1966**

Appointed on **14 March 2013**

Resigned on **29 April 2015**

Nationality **Australian**

Country of residence **United Kingdom**

Occupation **Director**

## REEVES, Barbara

Correspondence address **Flat 2, 24 Bracknell Gardens, London, NW3 7ED**

Role Resigned **Nominee Director**

Date of birth **October 1962**

Appointed on **2 September 1998**

Resigned on **12 October 1998**

Nationality **British**

## RICH, Michael William

Correspondence address **Hillfield, Gorse Hill, Farningham, Kent, DA4 0JU**

Role Resigned **Nominee Director**

Date of birth **July 1947**

Appointed on **2 September 1998**

Resigned on **12 October 1998**

Nationality **British**

## RINK, Timothy James, Dr

Correspondence address **41 Avenue Hector Otto Apt 81, Monaco, Mc98000, France**

Role Resigned **Director**

Date of birth **August 1946**

Appointed on **19 July 2000**

Resigned on **26 January 2007**

Nationality **British**

Occupation **Company Director**

## SMITH, Anthony John

Correspondence address **Ashleworth House, Weedon Hill, Hyde Heath, Amersham, Buckinghamshire, HP6 5RH**

Role Resigned **Director**

Date of birth **August 1955**

8/2/2020                          ILLUMINA CAMBRIDGE LIMITED - Officers (free information from Companies House)

Appointed on  **29 January 2002**

Resigned on  **26 January 2007**

Nationality  **British**

Country of residence  **England**

Occupation  **Chief Technology Officer**

## STAPLEY, Marc Andrew

Correspondence address  **5200 Illumina Way, San Diego, California, Usa, 92122**

Role Resigned  **Director**

Date of birth  **December 1969**

Appointed on  **8 May 2012**

Resigned on  **29 April 2015**

Nationality  **British Citizen**

Country of residence  **Usa**

Occupation  **Cfo**

## VAN OENE, Mark David

Correspondence address  **Chesterford Research Park, Little Chesterford, Saffron Walden, Essex, CB10 1XL**

Role Resigned  **Director**

Date of birth  **July 1972**

Appointed on  **14 September 2017**

Resigned on  **8 October 2018**

Nationality  **Canadian**

Country of residence  **United States**

Occupation  **Sr Vice President & Chief Commercial Officer**

## WEST, John Stephen

Correspondence address  **10221 Adriana Avenue, Cupertino, California 95014, Usa**

Role Resigned  **Director**

Date of birth  **December 1956**

Appointed on  **6 August 2004**

Resigned on  **26 January 2007**

Nationality  **American**

Country of residence  **United States**

Occupation  **Ceo**

## WILLIAMSON, Alan Rowe, Dr

Correspondence address  **Maywood, One Tree Lane, Beaconsfield, Buckinghamshire, HP9 2BU**

Role Resigned  **Director**

Date of birth  **April 1937**

8/2/2020                                ILLUMINA CAMBRIDGE LIMITED - Officers (free information from Companies House)

Appointed on  **19 July 2000**

Resigned on  **30 July 2004**

Nationality  **British**

Country of residence  **Uk**

Occupation  **Consultant**

Tell us what you think of this service(link opens a new window) (https://www.research.net/r/S78XJMV) Is there anything wrong with this page?
(link opens a new window) (https://beta.companieshouse.gov.uk/help/feedback?
sourceurl=https://beta.companieshouse.gov.uk/company/03625145/officers)

# EXHIBIT 9



About Us

## At Illumina, our core values stem from innovation, discovery, and collaboration.

As an executive team, we strive to deliver the genomic technologies and trusted solutions that deepen our understanding of genetics and promise to shift the future of health care and beyond.



### Francis deSouza

**President & Chief Executive Officer**



### Dr. Alex Aravanis, MD, PhD

*Senior Vice President & Chief Technology Officer*



### Nicole Berry

*Senior Vice President and General Manager of Commercial Operations–Americas Region*



8/2/2020                                                     Management Team

**Your Privacy Is Important**

At Illumina, we believe responsible data stewardship is essential to promote trust and support innovation. For more details, you may review our Privacy Policy.

California Consumer Privacy Act

California residents may request that we disclose information collected in the normal course of business and how that information is used to personalize your experience. To review or change how this data is used, you may make a request through this Web Form or call +1 (888) 914-9661, PIN: 320 533. Illumina uses OneTrust, a privacy management software tool, to handle your request. You may receive emails through the OneTrust system as your request is processed. If you have any questions, you may contact the Illumina Privacy Team at privacy@illumina.com.



Got It



**Joydeep Goswami, PhD**

Senior Vice President of Corporate
Development and Strategic
Planning



**Aimee Hoyt**

Senior Vice President & Chief
People Officer



**Li Qing**

Vice President and General
Manager, Greater China



**Bob Ragusa**

Senior Vice President, Global
Quality & Operations



**Mostafa Ronaghi, PhD**

Senior Vice President of
Entrepreneurial Development



**Jacquie Ross**

Vice President of Corporate
Communications and Corporate
Social Responsibility







8/2/2020

Management Team

**Your Privacy Is Important**

At Illumina, we believe responsible data stewardship is essential to promote trust and support innovation. For more details, you may review our Privacy Policy.

**California Consumer Privacy Act**

California residents may request that we disclose information collected in the normal course of business and how that information is used to personalize your experience. To review or change how this data is used, you may make a request through this Web Form or call +1 (888) 914-9661, PIN: 320 533. Illumina uses OneTrust, a privacy management software tool, to handle your request. You may receive emails through the OneTrust system as your request is processed. If you have any questions, you may contact the Illumina Privacy Team at privacy@illumina.com.





### Gretchen Weightman

**Vice President & General Manager
—Asia Pacific & Japan**

**Innovative technologies**

At Illumina, our goal is to apply innovative technologies to the analysis of genetic variation and function, making studies possible that were not even imaginable just a few years ago. It is mission critical for us to deliver innovative, flexible, and scalable solutions to meet the needs of our customers. As a global company that places high value on collaborative interactions, rapid delivery of solutions, and providing the highest level of quality, we strive to meet this challenge. Illumina innovative sequencing and array technologies are fueling groundbreaking advancements in life science research, translational and consumer genomics, and molecular diagnostics.

**For Research Use Only. Not for use in diagnostic procedures (except as specifically noted).**

© 2020 Illumina, Inc. All rights reserved.

All trademarks are the property of Illumina, Inc. or their respective owners.
For specific trademark information, see www.illumina.com/company/legal.html.

Privacy Policy



# EXHIBIT 10

☰ Menu     🔍 Search                      **Bloomberg**                         Sign In     **Subscribe**

**Quick Links**   Stocks   Currencies   Commodities   Rates & Bonds   Sectors   Watchlist

RECENTLY VIEWED COMPANIES

| APPLE INC | TRILLER INC | AMAZON.COM INC | CYTODYN INC | LEPU MEDICAL-A | LUCKIN COFFE-ADR | |
|---|---|---|---|---|---|---|
| 425.04 | Private Company | 3,164.68 | 4.06 | 42.88 | 2.05 | |
| ▲ +40.28 | | ▲ +112.80 | ▼ -0.56 | ▲ +0.08 | ▲ +0.20 | |

# Paula Dowdy
Senior VP & Gen Mgr:Commerical Europe, Illumina Inc

| CURRENT POSITION | TENURE AT CURRENT POSITION | PREVIOUS POSITION |
|---|---|---|
| Senior VP & Gen Mgr:Commerical Europe, Illumina Inc | 8/2016-PRESENT | Senior VP:Cloud Services, Cisco Systems Inc |

| EDUCATION | BOARD MEMBERSHIPS | INDUSTRY |
|---|---|---|
| Pepperdine University University of California | Aveva Group PLC | Medical Equipment & Devices |

CURRENT PRICE

**ILMN:US**  382.16 USD  ▼ -0.62 -0.16%  AS OF 07/31/2020  SEE QUOTE

## Board Memberships

| TITLE | COMPANY | TENURE |
|---|---|---|
| **Board Member** | Aveva Group PLC | 02/2019-PRESENT |

## Career History

| TITLE | COMPANY | TENURE |
|---|---|---|
| **Senior VP & Gen Mgr:Commerical Europe** | Illumina Inc | 08/2016-PRESENT |
| **Senior VP:Cloud Services** | Cisco Systems Inc | UNKNOWN-05/2016 |
| | Compuserve Ltd | FORMER |
| | | VIEW MORE ⌄ |

## Education

| DEGREE | INSTITUTION |
|---|---|

| Health Care | Medical Equipment & Devices | Life Science Equipment | 05/16/2000 |

| ADDRESS | PHONE | WEBSITE | NO. OF EMPLOYEES |
|---|---|---|---|
| 5200 Illumina Way San Diego, CA 92122 United States | 1-858-202-4500 | www.illumina.com | 7700 |

MORE INFO >

# Most Popular

| | | |
|---|---|---|
| AAPL:US **APPLE INC** 425.04 USD ▲ +40.28 +10.47% | | |
| 1575851D:US **TRILLER INC** Private Company | | |
| AMZN:US **AMAZON.COM INC** 3,164.68 USD ▲ +112.80 +3.70% | | |
| 296:GR **CYTODYN INC** 4.06 EUR ▼ -0.56 -12.12% | | |
| 300003:CH **LEPU MEDICAL-A** 42.88 CNY ▲ +0.06 +0.14% | | |

Tab☯la Feed

**Look Closer, The Photographer Was Not Expecting This Photo**
Zen Herald | Sponsored

**'The Price Is Right' Scene That's Forever In Our Minds**
Definition | Sponsored

**He Died 15 Years Ago, Now His Family Confirms The Rumors**
Fresh Edits | Sponsored

**She Gave 'The Price Is Right' Crowd A Little Extra**
Definition | Sponsored

**Remember Him? Better Sit Down Before You See What He Looks Like Now**
FinancialAdvisorHeroes | Sponsored

**The Scene That Ended The Brady Bunch For Good**
Historical Post | Sponsored

Bloomberg

**A new approach for Siemens.**
Siemens | Sponsored

**Michael Jordan's New $80 Million Yacht is Unreal**
investing.com | Sponsored

**"Lily" From AT&T Causes a Stir On The Red Carpet**
Living Magazine | Sponsored

**You May Like**

**Look Closer, The Photographer Was Not Expecting This Photo**
Zen Herald | Sponsored

**'The Price Is Right' Scene That's Forever In Our Minds**
Definition | Sponsored

by Taboola

## People Also Search For

**Carma Dennis McGee**
Judge, Tennessee Court of Apppeals

**Louis Dejoy**
Postmaster General/CEO, (US)Postal Service

**Jim Continenza**

Paula Dowdy, Illumina Inc: Profile and Biography – Bloomberg Markets

©2020 Bloomberg L.P. All Rights Reserved
Careers Made in NYC Advertise Ad Choices ▷ Contact Us Help

# EXHIBIT 11

1  **Folkman LLC**
   Theodore J. Folkman (pro hac vice)
2  53 State Street, Suite 500
   Boston, MA 02109
3  Tel. (617) 219-9664
   ted@folkman.law
4

5  **Hecht Partners LLP**
   Minyao Wang (pro hac vice)
6  125 Park Avenue, 25th Floor
   New York, NY 10017
7  Tel. (646) 627-7616
   mwang@hechtpartners.com
8

9  **Weil, Gotshal & Manges LLP**
   Edward R. Reines (Bar No. 135690)
10 edward.reines@weil.com
   Derek C. Walter (Bar No. 246322)
11 derek.walter@weil.com
   201 Redwood Shores Parkway
12 Redwood Shores, CA 94065
   Tel. (650) 802-3000
13

14 Attorneys for Applicant
   Illumina Cambridge Ltd.
15

**Quinn Emanuel Urquhart & Sullivan, LLP**
David Bilsker (Bar No. 152383)
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel. (415) 875-6600
davidbilsker@quinnemanuel.com

Margaret Shyr (Bar No. 300253)
555 Twin Dolphin Drive, 5th Floor
Redwood Shores, CA 94065
Tel. (650) 801-5000
margaretshyr@quinnemanuel.com

Anne S. Toker (pro hac vice)
annetoker@quinnemanuel.com
Joseph Milowic, III (pro hac vice)
josephmilowic@quinnemanuel.com
51 Madison Avenue, 22nd Floor
New York, NY 10010-1601
Tel. (212) 849-7000

Attorneys for Respondents
BGI Americas Corp., MGI Americas, Inc., and
Complete Genomics Inc.

16

17              **UNITED STATES DISTRICT COURT**
                **NORTHERN DISTRICT OF CALIFORNIA**
18                 **SAN FRANCISCO DIVISION**

19

20 ILLUMINA CAMBRIDGE LTD.,

21              Applicant,

22       v.

23 COMPLETE GENOMICS INC., et al.

24              Respondents.

25

26

27

28

Case No. 3:19-mc-80215-WHO (TSH)

**AMENDED STIPULATED PROTECTIVE ORDER**

Judge:  Hon. Thomas S. Hixson

---

1   **1.    PURPOSES AND LIMITATIONS**

2        The respondents, BGI Americas Corp., MGI Americas, Inc., and Complete Genomics, Inc.

3   (collectively, "Respondents") in this discovery proceeding under 28 U.S.C. § 1782 ("the 1782

4   Proceeding") assert that the subpoenas issued in the Proceeding ("the Subpoenas") may require the

5   production of confidential information in the form of trade secrets or other confidential business,

6   personal and/or technical information, as well as information that constitutes "protected health

7   information" under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"). The

8   Respondents recognize that it may be necessary to disclose certain of the asserted confidential

9   information in order to comply with their obligations under the Subpoenas.   Pursuant to Rule 26(c) of

10  the Federal Rules of Civil Procedure, the applicant, Illumina Cambridge Ltd. ("the Applicant") and the

11  Respondents, by and through their respective undersigned counsel, hereby stipulate and agree to the

12  request for, and entry of, the following Stipulated Protective Order (hereinafter, "Order").

13       The Applicant and the Respondents acknowledge that this Order does not confer blanket

14  protections on all disclosures or responses to discovery and that the protection it affords from public

15  disclosure and use extends only to the limited information or items that are entitled to confidential

16  treatment under the applicable legal principles. The parties further acknowledge, as set forth in Section

17  17.3, below, that this Order does not entitle them to file confidential information under seal; this Court's

18  Civil Local Rule 79-5 and this Court's Standing Order on Administrative Motions to File Under Seal,

19  and the rules and practices of each of the foreign courts before which the lawsuits that gave rise to the

20  1782 Proceeding are pending, set forth the procedures that must be followed and the standards that will

21  be applied when a party seeks permission from the court to file material under seal.

22  **2.    DEFINITIONS**

23       2.1.    *Challenging Party*: The term "Challenging Party" shall mean a Party or Non-Party that

24  challenges the designation of information or items under this Order.

25       2.2.    *Confidential Information*: The term "CONFIDENTIAL INFORMATION" shall mean

26  information or material that a designating party believes, in good faith, embodies, contains, reflects, or

27  refers to confidential information or material that is used by the Designating Party in, or pertaining to,

28  its business, which information or material is not generally or publicly known and which the designating

1    party would normally not reveal to third parties, including but not limited to confidential research,

2    development, commercial, proprietary, technical, business, financial, sensitive or private information

3    or material.

4       2.3.      *Counsel (without qualifier)*: The term "Counsel" shall mean Outside Counsel of Record

5    and House Counsel (as well as their support staff).

6       2.3.1   *Court:* The term "Court" shall mean this Court and each of the foreign courts before

7    which any of the Foreign Actions comprising the Litigation are pending.

8       2.4.      *Designating Party:* The term "Designating Party" shall mean a Party or Non-Party that

9    designates information or items that it produces in disclosures or in response to discovery as

10   "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION", "CONFIDENTIAL INFORMATION",

11   or "HIGHLY CONFIDENTIAL – SOURCE CODE".

12      2.5.      *Discovery Material*: The term "Discovery Material" shall mean any document, material,

13   item, testimony, information, or thing filed with or presented to the Court or produced or disclosed

14   pursuant to the Subpoenas, including without limitation, for example, responses to requests for

15   production; affidavits; and deposition testimony or transcripts; and all copies, extracts, summaries,

16   compilations, presentation by parties or counsel to or in court, designations, and portions thereof.

17      2.6.      *Highly Confidential – Source Code*: The term "HIGHLY CONFIDENTIAL – SOURCE

18   CODE" shall mean information or material that a designating party believes, in good faith, embodies,

19   contains, reflects, or refers to Source Code.

20      2.7.      *House Counsel*: The term "House Counsel" shall mean attorneys who are employees of

21   a Party.  House Counsel does not include Outside Counsel of Record or any other outside counsel.

22      2.8.      *Litigation*:  The term "Litigation" shall mean the 1782 Proceeding and the following

23   foreign cases (together "Foreign Actions"): (i) the case between Illumina Cambridge Limited on the

24   one hand and Latvia MGI Tech SIA and MGI Tech Co. Ltd. on the other in the Dusseldorf Regional

25   Court in Germany, (ii)  the case between Illumina Cambridge Limited and Latvia MGI Tech SIA in

26   the Federal Patent Court in Switzerland, (iii) the case between Illumina Cambridge Limited and

27   Illumina, Inc. on the one hand and BGI Europe A/S on the other in the Maritime and Commercial Court

28   in Denmark, (iv) the case between Illumina Cambridge Limited and Genoks Teknoloji Sağlik Bilişim

1    Turizm Hiz. Endüstriyel Makine Elektrik Elektronik İthalat Ihracat San. Tic. Ltd. Şti.in the Istanbul

2    Civil Court for Intellectual and Industrial Rights in Turkey; (v) the case between Illumina Cambridge

3    Limited on the one hand and MGI International Sales Co., Ltd. and BGI Complete Genomics Hong

4    Kong Co., Ltd. on the other in the Düsseldorf Regional Court in Germany; (vi) a case to be brought by

5    Illumina Cambridge Limited and Illumina Inc. against BGI Europe A/S and BGI Complete Genomics

6    Hong Kong Co., Ltd. in the Maritime and Commercial Court in Denmark; (vii) a case to be brought by

7    Illumina Cambridge Limited against Witec AG in the Federal Patent Court in Switzerland; and (viii) a

8    case to be brought by Illumina Cambridge Limited against MGI International Sales Co., Ltd. in the

9    Federal Patent Court in Switzerland, including any appeals therefrom in any of the aforementioned

10   cases.

11        2.9.     *Non-Party:* The term "Non-Party" shall mean any natural person, partnership,

12   corporation, association, or other legal entity other than a Party.

13        2.10.    *Outside Attorneys' Eyes Only Information*: The term "OUTSIDE ATTORNEYS' EYES

14   ONLY INFORMATION" shall mean "confidential information" (i) of a commercially sensitive nature

15   such as a trade secret that a designating party determines, in good faith, is likely to cause significant

16   competitive harm to its existing or prospective commercial relationships if disclosed to third parties or

17   select employees or agents of the Receiving Party, including, but not limited to, unpublished pending

18   domestic or foreign patent applications; non-public financial, marketing, strategic, organizational,

19   operational or competitive information; and highly sensitive technical information relating to the

20   design, development, research, testing and production of products, or (ii) that a designating party

21   believes, in good faith, embodies, contains, or reflects "protected health information" under HIPAA;

22   for purposes of this Order, "protected health information" comprises the identifiers set forth in 45

23   C.F.R. § 164.514(b)(2)(i).

24        2.11.    *Outside Counsel of Record*: The term "Outside Counsel of Record" shall mean attorneys

25   who are not employees of a Party to this Litigation but are retained to represent or advise a Party to

26   this Litigation and have appeared in this Litigation on behalf of that Party or are affiliated with a law

27   firm which has appeared on behalf of that Party.

28

AMENDED STIPULATED PROTECTIVE ORDER                 4                 CASE NO. 3:19-MC-80215-WHO (TSH)

2.12.   *Party*:  The term "Party" shall mean any party to this Litigation, including all of its officers, directors, employees, consultants, retained experts, and Outside Counsel of Record (and their support staffs).

2.13.   *Producing Party*:  The term "Producing Party" shall mean any Party or any third party, including its counsel, retained experts, directors, officers, employees, or agents, who produces any Discovery Material pursuant to the Subpoenas

2.14.   *Professional Vendors*.  The term "Professional Vendors" shall mean persons or entities that provide litigation support services (e.g., photocopying, videotaping, translating, preparing exhibits or demonstrations, and organizing, storing, or retrieving data in any form or medium) and their employees and subcontractors.

2.15.   *Protected Material*:  The term "Protected Material" shall mean and refer to all information and material subject to this Order that constitutes or contains a trade secret or other confidential research, development, or commercial information, including but not limited to non-public technical, business, or financial information, marketing plans, customer lists, vendor lists and proposals, pricing and cost data, business plans, user information, and all information, documents, and things referring or relating to the foregoing, including copies, abstracts, and summaries of the same. "Protected Material" includes "CONFIDENTIAL INFORMATION", "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" and "HIGHLY CONFIDENTIAL – SOURCE CODE" as those terms are defined above.  The scope of this Order shall be understood to encompass not only Protected Material which is expressly designated as "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION", "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE", but also any information copied therefrom, and all copies, excerpts, and summaries thereof, as well as testimony and oral conversations which reveal that information.

2.16.   *Receiving Party*:  The term "Receiving Party" shall mean any Party to this Litigation that receives Discovery Material from a Producing Party.

2.17.   *Source Code:*  The term "Source Code" shall mean extremely sensitive "Confidential Information" representing computer code and associated comments and revision histories, formulas, engineering specifications, or schematics that define or otherwise describe in detail the algorithms and

1  structure of software or hardware designs, as well as bioinformatics algorithms or similar information,

2  disclosure of which to another Party or Non-Party would create a substantial risk of serious harm that

3  could not be avoided by less restrictive means.

4  **3.     SCOPE**

5      The protections conferred by this Order cover not only Protected Material (as defined above),

6  but also (1) any information copied or extracted from Protected Material; (2) all copies, excerpts,

7  summaries, or compilations of Protected Material; and (3) any testimony, conversations, or

8  presentations by Parties or their Counsel that might reveal Protected Material.   However, the

9  protections conferred by this Order do not cover the following information: (a) any information that is

10  in the public domain at the time of disclosure to a Receiving Party or becomes part of the public domain

11  after its disclosure to a Receiving Party as a result of publication not involving a violation of this Order,

12  including becoming part of the public record through trial or otherwise;    (b) any information known

13  to the Receiving Party prior to the disclosure or obtained by the Receiving Party after the disclosure

14  from a source who obtained the information lawfully and under no obligation of confidentiality to the

15  Designating Party; and (c) any information obtained under an obligation of confidentiality to the

16  Designating Party governed by a separate agreement or order entered in one of the Foreign Actions.

17  **4.     DURATION**

18      Even after final disposition of this litigation, the confidentiality obligations imposed by this

19  Order shall remain in effect until a Designating Party agrees otherwise in writing or a court order

20  otherwise directs.  Final disposition shall be deemed to be the later of (1) dismissal of all claims and

21  defenses in this Litigation, with or without prejudice; and (2) final judgment herein after the completion

22  and exhaustion of all appeals, rehearings, remands, trials, or reviews of the Litigation, including the

23  time limits for filing any motions or applications for extension of time pursuant to applicable law.

24  **5.     DESIGNATING PROTECTED MATERIAL**

25      5.1.    Exercise of Restraint and Care in Designating Material for Protection.  Each Party or

26  Non-Party that designates information or items for protection under this Order must take care to limit

27  any such designation to specific material that qualifies under the appropriate standards.  To the extent

28  it is practical to do so, the Designating Party must designate for protection only those parts of material,

1  documents, items, or oral or written communications that qualify – so that other portions of the

2  material, documents, items, or communications for which protection is not warranted are not swept

3  unjustifiably within the ambit of this Order.

4          Mass, indiscriminate, or routinized designations are prohibited. Designations that are

5  shown to be clearly unjustified or that have been made for an improper purpose (e.g., to unnecessarily

6  encumber or retard the case development process or to impose unnecessary expenses and burdens on

7  other parties) expose the Designating Party to sanctions.

8          If it comes to a Designating Party's attention that information or items that it designated

9  for protection do not qualify for protection at all or do not qualify for the level of protection initially

10  asserted, that Designating Party must promptly notify all other parties that it is withdrawing the

11  mistaken designation.

12      5.2.    <u>Manner and Timing of Designations</u>.  Except as otherwise provided in this Order (see,

13  e.g., second paragraph of Section 5.2(a) below), or as otherwise stipulated or ordered, Discovery

14  Material that qualifies for protection under this Order must be clearly so designated before the material

15  is disclosed or produced.

16      Designation in conformity with this Order requires:

17          (a) for information in documentary form (e.g., paper or electronic documents, but

18  excluding transcripts of depositions or other pretrial or trial proceedings), that the Producing Party affix

19  the legend "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION", "CONFIDENTIAL

20  INFORMATION", or "HIGHLY CONFIDENTIAL – SOURCE CODE" to each page that contains

21  protected material.

22      A Party or Non-Party that makes original documents or materials available for inspection need

23  not designate them for protection until after the inspecting Party has indicated which material it would

24  like copied and produced.  During the inspection and before the designation, all of the material made

25  available for inspection shall be deemed "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION".

26  After the inspecting Party has identified the documents it wants copied and produced, the Producing

27  Party must determine which documents, or portions thereof, qualify for protection under this Order.

28  Then, before producing the specified documents, the Producing Party must affix the appropriate legend

1   "OUTSIDE ATTORNEYS' EYES ONLY", "CONFIDENTIAL INFORMATION", or "HIGHLY

2   CONFIDENTIAL – SOURCE CODE" to each page that contains Protected Material.

3            (b) for testimony given in deposition or in other pretrial or trial proceedings, that the

4   Designating Party identify on the record, before the close of the deposition, hearing, or other

5   proceeding, all protected testimony and specify the level of protection being asserted.  When it is

6   impractical to identify separately each portion of testimony that is entitled to protection and it appears

7   that substantial portions of the testimony may qualify for protection, the entire transcript will be treated

8   as "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" and the Designating Party has up to

9   thirty (30) days from the final transcript to identify the specific portions of the testimony as to which

10  protection is sought and to specify the level of protection being asserted.  Only those portions of the

11  testimony that are appropriately designated for protection within the thirty (30) days shall be covered

12  by the provisions of this Order.  Alternatively, a Designating Party may specify, at the deposition or

13  up to thirty (30) days afterwards if that period is properly invoked, that the entire transcript shall be

14  treated as "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or "CONFIDENTIAL

15  INFORMATION".

16       Parties shall give the other parties notice if they reasonably expect a deposition, hearing or other

17  proceeding to include Protected Material so that the other parties can ensure, to the maximum extent

18  permissible under the applicable law, that only authorized individuals who have signed the

19  "Acknowledgment of Protective Order" (EXHIBIT A) are present at those proceedings.  The use of a

20  document as an exhibit at a deposition shall not in any way affect its designation as "OUTSIDE

21  ATTORNEYS' EYES ONLY INFORMATION" or "CONFIDENTIAL INFORMATION".

22       Transcripts containing Protected Material shall have an obvious legend on the title page that

23  the transcript contains Protected Material, and the title page shall be followed by a list of all pages

24  (including line numbers as appropriate) that have been designated as Protected Material and the level

25  of protection being asserted by the Designating Party.  The Designating Party shall inform the court

26  reporter of these requirements.  Any transcript that is prepared before the expiration of a thirty (30)

27  day period for designation shall be treated during that period as if it had been designated "OUTSIDE

28

AMENDED STIPULATED PROTECTIVE ORDER                    8                    CASE NO. 3:19-MC-80215-WHO (TSH)

1   ATTORNEYS' EYES ONLY INFORMATION" in its entirety unless otherwise agreed. After the

2   expiration of that period, the transcript shall be treated only as actually designated.

3           (c) for information produced in some form other than documentary and for any other

4   tangible items, that the Producing Party affix in a prominent place on the exterior of the container or

5   containers in which the information or item is stored the legend "OUTSIDE HIGHLY ATTORNEYS'

6   EYES   ONLY   INFORMATION",   "CONFIDENTIAL   INFORMATION",   or   "HIGHLY

7   CONFIDENTIAL – SOURCE CODE".

8      5.3.   <u>Inadvertent Failures to Designate</u>. If timely corrected, an inadvertent failure to designate

9   qualified information or items does not, standing alone, waive the Designating Party's right to secure

10   protection under this Order for such material. An inadvertent failure to designate qualified information

11   or items is subject to the further provisions in Section 15 below.

12   **6.     CHALLENGING CONFIDENTIALITY DESIGNATIONS**

13      6.1.   <u>Timing of Challenges</u>. Any Party or Non-Party may challenge a designation of

14   confidentiality at any time. Unless a prompt challenge to a Designating Party's confidentiality

15   designation is necessary to avoid foreseeable, substantial unfairness, unnecessary economic burdens,

16   or a significant disruption or delay of the litigation, a Party does not waive its right to challenge a

17   confidentiality designation by electing not to mount a challenge promptly after the original designation

18   is disclosed.

19      6.2.   <u>Meet and Confer</u>. The Challenging Party shall initiate the dispute resolution process by

20   providing written notice of each designation it is challenging or objecting to the amount of source code

21   requested be produced (as detailed in Section 7 below) and describing the basis for the challenge. To

22   avoid ambiguity as to whether a challenge has been made, the written notice must recite that the

23   challenge to confidentiality or objection to the amount of source code requested be produced is being

24   made in accordance with this specific paragraph of the Protective Order. The parties shall attempt to

25   resolve each challenge in good faith and must begin the process by conferring directly (in voice to

26   voice dialogue; other forms of communication are not sufficient) within seven (7) days of the date of

27   service of notice. In conferring, the Challenging Party must explain the basis for its belief that the

28   confidentiality designation was not proper or the amount of source code requested be produced is

1    excessive and must give the Designating Party an opportunity to review the designated material or the

2    amount of source code requested to be produced, to reconsider the circumstances, and, if no change in

3    designation is offered or amount of source code requested is reduced, to explain the basis for the chosen

4    designation or amount of source code requested.  A Challenging Party may proceed to the next stage

5    of the challenge process only if it has engaged in this meet and confer process first or establishes that

6    the Designating Party is unwilling to participate in the meet and confer process in a timely manner.

7        6.3    Judicial Intervention.  After the earlier of (a) the parties agreeing that the meet and confer

8    process will not resolve their dispute, or (b) fourteen (14) days after the service of notice, a Challenging

9    Party may initiate the process for judicial intervention if there is good cause for doing so pursuant to

10   the process for resolution of discovery disputes specified in Judge Thomas Hixson's Discovery

11   Standing Order, except that the Designating Party is permitted to submit declarations to support its

12   confidentiality designations, as would be required under Civil Local Rule 79-5. More specifically, the

13   Challenging Party shall serve on the Designating Party its portion of a five (5) page joint letter brief

14   explaining the basis for its belief that the confidentiality designation was not proper or the amount of

15   source code requested be produced is excessive. Within seven (7) business days of receipt of the

16   Challenging Party's portion of this joint letter brief, the Designating Party shall provide to the

17   Challenging Party its portion of the five (5) page joint letter brief explaining the basis for the chosen

18   confidentiality designation (including any declarations to support the designation) or that the amount

19   of source code requested to be produced is not excessive. The Parties shall then work together in good

20   faith to finalize the joint letter brief, and file the joint letter brief and any supporting declarations with

21   the Court in a reasonably expedient manner. Any motion brought pursuant to this provision must be

22   accompanied by a competent declaration affirming that the movant has complied with the meet and

23   confer requirements imposed by the preceding paragraph.

24       The burden of persuasion in any such challenged proceeding shall be on the Designating Party.

25   Frivolous challenges and those made for an improper purpose (e.g., to harass or impose unnecessary

26   expenses and burdens on other parties) may expose the Challenging Party to sanctions. All parties shall

27   continue to afford the material in question the level of protection to which it is entitled under the

28   Producing Party's designation until the court rules on the challenge.

7.    **SOURCE CODE**

7.1.    <u>Introduction</u>.  To the extent production of source code becomes necessary in this case, including but not limited to the information described in Section 2.17, a Producing Party may designate such source code as "HIGHLY CONFIDENTIAL – SOURCE CODE".

7.2.    <u>Protections</u>.  Protected Material designated as "HIGHLY CONFIDENTIAL – SOURCE CODE" shall be subject to all of the protections afforded to "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" information, including the Prosecution Bar set forth in Section 11, and may be disclosed only to the individuals to whom "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" may be disclosed.

7.3.    <u>Procedure For Review of Source Code</u>.  Any source code produced in discovery shall be made available for inspection, in a format allowing it to be reasonably reviewed and searched, during normal business hours or at other mutually agreeable times, at an office of the Producing Party's Outside Counsel of Record or another mutually agreed upon location.  The source code shall be made available for inspection on a secured computer with printing capability in a secured room without Internet access or network access to other computers, and the Receiving Party shall not copy, remove, or otherwise transfer any portion of the source code or sequence information onto any recordable media or recordable device.  The Producing Party may visually monitor the activities of the Receiving Party's representatives during any source code or sequence information review, but only to ensure that there is no unauthorized recording, copying, or transmission of the source code or sequence information.

7.4.    <u>Conduct of Review of Source Code</u>.  During the inspection, the Receiving Party may print portions of the source code.  The Receiving Party may then request paper copies of limited portions of source that are reasonably necessary for the preparation of court filings, pleadings, expert reports, or other papers, or for deposition or trial, but shall not request paper copies for the purpose of reviewing the source code other than electronically as set forth in Section 7.3 in the first instance.  The Producing Party shall provide the limited portions of source code in paper form, including bates numbers and the label "HIGHLY CONFIDENTIAL – SOURCE CODE".  The Producing Party may challenge the amount of source code or sequence information requested in hard copy form pursuant to the dispute resolution procedure and timeframes set forth in Section 6, whereby the Producing Party is

1   the "Challenging Party" and the Receiving Party is the "Designating Party" for purposes of resolving

2   the dispute.  Any such information at issue in the dispute will not be produced until the dispute is

3   resolved.

4       7.5.      Review of Any Printed Source Code.  The Receiving Party shall maintain a record of

5   any individual who has inspected any portion of the source code in electronic or paper form.  The

6   Receiving Party shall maintain all paper copies of any printed portions of the source code in a secured,

7   locked area.  The Receiving Party shall not create any electronic or other images of the paper copies

8   and shall not convert any of the information contained in the paper copies into any electronic format

9   except for use in expert reports or written discovery.  To the extent it is necessary to reference SOURCE

10  CODE in an expert report, written discovery or submission to the court, any excerpts of the SOURCE

11  CODE must be limited to the minimum amount necessary to support the topic being addressed, but in

12  no event may a SOURCE CODE excerpt exceed 25 lines of contiguous code. Documents containing

13  excerpts of or references to SOURCE CODE must be designated "HIGHLY CONFIDENTIAL –

14  OUTSIDE ATTORNEYS' EYES ONLY – SOURCE CODE".  The Receiving Party shall only make

15  additional paper copies if such additional copies are (1) necessary to prepare court filings, pleadings,

16  or other papers (including a testifying expert's expert report), (2) necessary for deposition, or (3)

17  otherwise necessary for the preparation of its case.  Any paper copies used during a deposition shall be

18  retrieved by the Producing Party at the end of each day and must not be given to or left with a court

19  reporter or any other unauthorized individual.

20  **8.      ACCESS TO AND USE OF PROTECTED MATERIAL**

21      8.1.     Basic Principles.  Except as expressly permitted by Section 19, a Receiving Party may

22  use Protected Material that is disclosed or produced by another Party or by a Non-Party in connection

23  with this case only for prosecuting, defending, or attempting to settle this Litigation.  Such Protected

24  Material may be disclosed only to the categories of persons and under the conditions described in this

25  Order.  When the Litigation has been terminated, a Receiving Party must comply with the provisions

26  of Section 18 below (FINAL DISPOSITION).

27          Protected Material must be stored and maintained by a Receiving Party at a location and

28  in a secure manner that ensures that access is limited to the persons authorized under this Order.

8.2.    <u>Disclosure of "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION"</u> and "HIGHLY CONFIDENTIAL – SOURCE CODE".   Protected Material marked "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" and "HIGHLY CONFIDENTIAL – SOURCE CODE" may be disclosed only to:

1.    the Receiving Party's Outside Counsel of Record, their staff, and their commercial copying vendors, data processing vendors, electronic discovery vendors, and/or database services;

2.    any person who (a) appears on the face of the Protected Material marked "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE" as an author, addressee, or recipient thereof, or (b) is a witness during a deposition, court hearing, or trial where specific documentary or testimonial evidence establishes that such person authored or received the Protected Material marked "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE" prior to its production or disclosure in this Litigation;

3.    the Court, its technical advisor, its personnel, and the jury in this Litigation;

4.    court reporters and videographers engaged for depositions, inspections, and other proceedings in this Litigation;

5.    subject to Section 8, approved persons or entities engaged by a Party or counsel as consultants, experts, translators, or interpreters to consult, testify, translate or interpret in the case, excluding employees, officers or directors of a named Party or of any parent, subsidiary, or affiliate of any named Party, and provided that, prior to receiving "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE", such persons or entities execute an undertaking in the form attached as EXHIBIT A agreeing to be bound by the terms of this Order;

6.    persons or entities engaged by a Party or counsel for a Party to provide jury or trial consulting services, provided that, prior to receiving "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE", such persons or entities

1  execute an undertaking in the form attached as EXHIBIT A, agreeing to be bound by the terms of this

2  Order; and

3        7.      persons or entities engaged by a Party or counsel for a Party to prepare graphic

4  or visual aids, or demonstrative exhibits, or Professional Vendors provided that, prior to receiving

5  "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or "HIGHLY CONFIDENTIAL –

6  SOURCE CODE", such persons or entities execute an undertaking in the form attached as EXHIBIT A,

7  agreeing to be bound by the terms of this Order.

8        8.3.    Disclosure of "CONFIDENTIAL INFORMATION".    Protected  Material  marked

9  "CONFIDENTIAL INFORMATION" may be disclosed only to:

10        1.      any employee of the Producing Party;

11        2.      any former counsel or employee of the Producing Party who was involved with

12  the matters to which the "CONFIDENTIAL INFORMATION" relates or refers;

13        3.      any person who authored or received the "CONFIDENTIAL INFORMATION"

14  prior to its production or disclosure in this Litigation;

15        4.      the Court, its technical advisor, its personnel, and the jury in this Litigation;

16        5.      the  Receiving  Party's  Outside  Counsel  of  Record,  their  staff,  and  their

17  commercial copying vendors, data processing vendors, electronic discovery vendors, and/or database

18  services;

19        6.      no more than three (3) officers, directors, and employees (including House

20  Counsel) of the Receiving Party to whom disclosure is reasonably necessary for this Litigation and

21  who have signed the undertaking attached as EXHIBIT A agreeing to be bound by the terms of this

22  Order;

23        7.      court reporters and videographers engaged for depositions, inspections, and

24  other proceedings in this Litigation;

25        8.      subject to Section 9, approved persons or entities engaged by a Party or counsel

26  as consultants, experts, translators, or interpreters to consult, testify, translate, or interpret in the case,

27  excluding employees, officers or directors of a named Party or of any parent, subsidiary, or affiliate of

28  any named Party, and provided that, prior to receiving "CONFIDENTIAL INFORMATION", such

1   persons or entities execute an undertaking in the form attached as EXHIBIT A agreeing to be bound

2   by the terms of this Order;

3           9.    persons or entities engaged by a Party or counsel for a Party to provide jury or

4   trial consulting services, provided that, prior to receiving "CONFIDENTIAL INFORMATION", such

5   persons or entities execute an undertaking in the form attached as EXHIBIT A, agreeing to be bound

6   by the terms of this Order;

7           10.    mock jurors or focus group members, provided that, prior to receiving

8   "CONFIDENTIAL INFORMATION," such persons execute an undertaking in the form attached as

9   EXHIBIT B, agreeing to be bound by the terms of this Order; and

10           11.    persons or entities engaged by a Party or counsel for a Party to prepare graphic

11   or visual aids, or demonstrative exhibits, or Professional Vendors provided that, prior to receiving

12   "CONFIDENTIAL INFORMATION," such persons or entities execute an undertaking in the form

13   attached as EXHIBIT A, agreeing to be bound by the terms of this Order.

14   **9.   CONDITIONS ON ACCESS TO PROTECTED MATERIAL**

15       9.1.    <u>Consultants and Experts</u>.  Prior to a Receiving Party giving, showing, disclosing, making

16   available or communicating Protected Material to any expert or consultant under Section 8, the

17   Receiving Party shall:  serve a written notice on the Producing Party that includes:  (i) the person's

18   name and business address; (ii) the person's present employer and title (along with a job description);

19   (iii) the person's up-to-date curriculum vitae or resume; (iv) a list of the cases in which the person has

20   testified at deposition or trial and all companies with which the person has consulted or by which the

21   person has been employed for the past five years; and (v) any previous or current relationship (personal

22   or professional) with any of the Parties.  If the up-to-date curriculum vitae or resume of the expert or

23   consultant provides the information required under this paragraph, then the information need not be

24   separately provided.  The Receiving Party shall include with such notice, a copy of the

25   Acknowledgment of Protective Order, in the form attached as EXHIBIT A, signed by the proposed

26   expert or consultant agreeing to be bound by the terms of this Order.

27       9.2.    <u>Objections to Proposed Consultants and Experts</u>.  The Producing Party shall be entitled

28   to object to such disclosure to the expert or consultant within five (5) business days after receipt of the

1   Acknowledgment of Protective Order executed by such expert or consultant, by stating specifically in

2   writing the reasons why such expert or consultant should not receive the Protected Material. Outside

3   Counsel of Record for the Producing Party and Outside Counsel of Record for the Receiving Party

4   shall meet and confer within three (3) business days after the Producing Party serves its objection, for

5   the purpose of attempting to resolve the objection. If the objection is not resolved by the Parties, the

6   Producing Party must file and serve a motion to prevent disclosure within seven calendar (7) business

7   days after such meet and confer. Otherwise, the Producing Party shall be deemed to have withdrawn

8   its objection. In any motion before the Court, the Producing Party shall set forth the Parties' meet and

9   confer efforts and shall bear the burden of showing the need for confidentiality and the grounds for its

10  objection. No disclosure of Protected Material shall be made to the proposed expert or consultant until

11  the Parties resolve the matter, the objection is withdrawn, or the Court permits such disclosure. The

12  filing and pendency of objections shall not limit, delay, or defer any disclosures of Protected Material

13  to persons as to whom no such objection has been made, nor shall it delay or defer any other pending

14  discovery unless the level of confidentiality bears directly on the objecting Party's ability to conduct

15  such discovery.

16      9.3.    <u>Authorization and Acknowledgment</u>.  To the extent required by Section 8, each person

17  authorized to receive Designated Material under this Order (excluding Judges, Magistrate Judges,

18  judicial law clerks, and clerical personnel of the Court before which this Litigation is pending or

19  qualified court reporters, as well as third party contractors and their employees involved solely in

20  document management, delivery or copying services for this Litigation) to whom Designated Material

21  is to be given, shown, disclosed, made available or communicated in any way, shall first execute an

22  Acknowledgment of Protective Order in the form attached as EXHIBIT A, agreeing to be bound by

23  the terms of this Order, acknowledging that Designated Material is subject to this Order, that the person

24  is authorized under Section 8 to receive Designated Material marked as "OUTSIDE ATTORNEYS'

25  EYES  ONLY  INFORMATION",  "CONFIDENTIAL  INFORMATION"  or  "HIGHLY

26  CONFIDENTIAL – SOURCE CODE", that the person has read this Order, that such person agrees to

27  comply with, and be bound by, this Order, and that such person is aware that contempt sanctions may

28  be entered for violation of this Order.

**10.   PROCEDURE FOR DISCLOSURES TO OTHER PERSONS**

If it becomes necessary for a Receiving Party's Outside Counsel of Record to seek the assistance of any person, other than those persons referred to in Section 8, and to disclose Protected Material to such person to properly prepare this Litigation for trial, the following procedures shall be employed:

(a)   Outside Counsel of Record for the Receiving Party shall notify, in writing, Outside Counsel of Record for the Producing Party, identifying therein the specific Protected Material to be disclosed and the name, address and position (along with a job description) of the person(s) to whom such disclosure is to be made;

(b)   If no objection to such disclosure is made by Outside Counsel of Record for the Producing Party within seven (7) business days of such notification, Outside Counsel of Record for the Receiving Party shall be free to make such disclosure to the designated person(s) consistent with this Order; provided, however, that Outside Counsel of Record for the Receiving Party shall serve upon Outside Counsel of Record for the Producing Party, prior to disclosure, an Acknowledgment of Protective Order in the form attached as EXHIBIT A, whereby such person agrees to comply with and be bound by this Order.

(c)   If, within five (5) business days, the Outside Counsel of Record for the Producing Party objects, in writing, to such disclosure, no disclosure shall be made, except by order of the Court upon a regularly noticed motion brought by the Receiving Party.  Before filing such a motion, outside counsel for the Receiving Party shall meet and confer with Outside Counsel of Record for the Producing Party in a good faith effort to resolve their differences; and

(d) Any Party moving for such an order requesting disclosure shall explain why the requested disclosure is appropriate, but the Producing Party shall bear the burden of justifying the confidentiality designation and explaining the harm that would result from the requested disclosure.

**11.   PROSECUTION BAR**

11.1.   Application of Prosecution Bar.  Absent written consent from the Producing Party or as explicitly permitted by this Paragraph 11, any attorney, patent agent, expert, or consultant of, for, or representing the Receiving Party who gains access to "OUTSIDE ATTORNEYS' EYES ONLY

1  INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE" shall not be involved in the

2  prosecution of patents or patent applications relating to DNA sequencing equipment and technology,

3  including without limitation the patents asserted in this Litigation and any patent or application

4  claiming priority to or otherwise related to the patents asserted in this Litigation, before any foreign or

5  domestic agency, including the United States Patent and Trademark Office ("the Patent Office") and

6  the European Patent Office ("EPO").  This prosecution bar is personal to the person who has gained

7  access to such "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or "HIGHLY

8  CONFIDENTIAL – SOURCE CODE" and shall not be imputed to any other person or entity.  For

9  purposes of this paragraph, "prosecution" includes directly or indirectly drafting, amending, advising,

10  or otherwise affecting the scope or maintenance of patent claims on behalf of the patent owner (for

11  example, original prosecution, reissue and reexamination proceedings).

12      11.2.    <u>Permitted Activities</u>.  Thus, the term "prosecution" as used in this paragraph does not

13  encompass the following activities:

        1.    Preparing a patent owner's declarants—including the inventors—for depositions
14
               in any proceeding challenging the validity of any patents asserted in this case or
15
               other U.S. litigations between any of the same parties or their affiliates;
16

        2.    Taking depositions of an accused infringer's declarants in any proceeding
17
               challenging the validity of any patent asserted in this case or other U.S. litigations
18
               between any of the same parties or their affiliates;
19

        3.    Reviewing the inventors' documents relating to conception and reduction to
20
               practice of their invention;
21

        4.    Discussing, with employees of a patent holder and inventors, discovery in, and
22
               the status of, any proceedings challenging the validity of any of that party's
23
               patents asserted in this case or other U.S. litigations between any of the same
24
               parties or their affiliates;
25

        5.    Discussing discovery in, and the status of, proceedings challenging the validity
26
               of the Asserted Patents with the patent holder's post-grant counsel;
27

        6.    Discussing responses to the arguments advanced by the party attacking the
28

1   validity of any patent asserted in this case or other U.S. litigations between any

2   of the same parties or their affiliates;

3       7.    Drafting patent owner's response and patent owner's preliminary response to any

4   petition challenging the validity of any patent asserted in this case or other U.S.

5   litigations between any of the same parties or their affiliates;

6       8.    Drafting declarations in support of patent owner's response to any petition

7   challenging the validity of any patent asserted in this case or other U.S. litigations

8   between any of the same parties or their affiliates; and

9       9.    Participating in the Foreign Actions or any related invalidity proceedings,

10   including in relation to the defense of any invalidity counterclaims on behalf of

11   the patent owner, which includes advising on, and arguing in respect of, the

12   validity and infringement of any amended claims filed in the Foreign Actions or

13   related invalidity proceedings.

14   To avoid any doubt, "prosecution" as used in this paragraph does not include representing a

15   party challenging a patent before a domestic or foreign agency (including, but not limited to, a reissue

16   protest, ex parte reexamination, or inter partes review).

17   11.3.    <u>Prohibited Activities</u>.   On the other hand, the term "prosecution" as used in this

18   paragraph does encompass the following activities:

19       1.    Drafting or advising on any claim amendments to be proposed in any proceeding

20   before any foreign or domestic agency, or in any proceeding challenging the

21   validity of any patent asserted in this Litigation or any U.S. litigations between

22   any of the same parties or their affiliates;

23       2.    Providing advice on the direction that proposed claim amendments should take

24   in any proceeding before any foreign or domestic agency, or in any proceeding

25   challenging the validity of any patent asserted in this Litigation or any U.S.

26   litigations between any of the same parties or their affiliates; and

27       3.    Discussing potential claim amendments with counsel in connection with any

28   proceeding before any foreign or domestic agency, or in any proceeding

challenging the validity of any patent asserted this Litigation or any U.S. litigations between any of the same parties or their affiliates.

11.4.  Duration. This Prosecution Bar shall begin when access to "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE" is first received by the affected individual and shall end two (2) years after final termination of this Litigation.

**12.  PROTECTED MATERIAL SUBPOENAED OR ORDERED PRODUCED IN OTHER LITIGATION**

If a Party is served with a subpoena or a court order issued in other litigation that compels disclosure of any information or items designated in this action as "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION", "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE" that Party must:

(a)  promptly notify in writing the Designating Party. Such notification shall include a copy of the subpoena or court order;

(b)  promptly notify in writing the party who caused the subpoena or order to issue in the other litigation that some or all of the material covered by the subpoena or order is subject to this Protective Order. Such notification shall include a copy of this Stipulated Protective Order; and

(c)  cooperate with respect to all reasonable procedures sought to be pursued by the Designating Party whose Protected Material may be affected.

If the Designating Party timely seeks a protective order, the Party served with the subpoena or court order shall not produce any information designated in this action as "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION", "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE" before a determination by the court from which the subpoena or order issued, unless the Party has obtained the Designating Party's permission. The Designating Party shall bear the burden and expense of seeking protection in that court of its confidential material – and nothing in these provisions should be construed as authorizing or encouraging a Receiving Party in this action to disobey a lawful directive from another court.

**13.  A NON-PARTY'S PROTECTED MATERIAL SOUGHT TO BE PRODUCED IN THIS LITIGATION**

(a)  The terms of this Order are applicable to information produced by a Non-Party in this

1   action and designated as "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION",
2   "CONFIDENTIAL INFORMATION" or "HIGHLY CONFIDENTIAL – SOURCE CODE". Such
3   information produced by Non-Parties in connection with this litigation is protected by the remedies
4   and relief provided by this Order. Nothing in these provisions should be construed as prohibiting a
5   Non-Party from seeking additional protections.

6       (b)    In the event that a Party is required, by a valid discovery request, to produce a Non-
7   Party's confidential information in its possession, and the Party is subject to an agreement with the
8   Non-Party not to produce the Non-Party's confidential information, then the Party shall:

9           1.    promptly notify in writing the Requesting Party and the Non-Party that some or
10           all of the information requested is subject to a confidentiality agreement with a
11           Non-Party;

12           2.    promptly provide the Non-Party with a copy of the Stipulated Protective Order
13           in this litigation, the relevant discovery request(s), and a reasonably specific
14           description of the information requested; and

15           3.    make the information requested available for inspection by the Non-Party.

16       (c)    If the Non-Party fails to object or seek a protective order from this court within fourteen
17   (14) days of receiving the notice and accompanying information, the Receiving Party may produce the
18   Non-Party's confidential information responsive to the discovery request.  If the Non-Party timely
19   seeks a protective order, the Receiving Party shall not produce any information in its possession or
20   control that is subject to the confidentiality agreement with the Non-Party before a determination by
21   the court.  Absent a court order to the contrary, the Non-Party shall bear the burden and expense of
22   seeking protection in this court of its Protected Material.

23   **14.   UNAUTHORIZED DISCLOSURE OF PROTECTED MATERIALS**

24       If a Receiving Party learns that, by inadvertence or otherwise, it has disclosed Protected
25   Material to any person or in any circumstance not authorized under this Stipulated Protective Order,
26   the Receiving Party must immediately (a) notify in writing the Designating Party of the unauthorized
27   disclosures, (b) use its best efforts to retrieve all unauthorized copies of the Protected Material, (c)
28   inform the person or persons to whom unauthorized disclosures were made of all the terms of this

Order, and (d) request such person or persons to execute the "Acknowledgment of Protective Order" that is attached hereto as EXHIBIT A.

**15.    INADVERTENT PRODUCTION OF PRIVILEGED OR OTHERWISE PROTECTED MATERIAL**

Counsel shall exert their best efforts to identify information (including documents or material) protected from discovery by the attorney-client privilege, the work-product doctrine or any other applicable privilege or immunity prior to the disclosure of any such documents or material.  If information subject to a claim of attorney-client privilege, work-product immunity, or other privilege, doctrine, right, or immunity is nevertheless inadvertently or unintentionally produced, such production shall in no way prejudice or otherwise constitute a waiver or estoppel as to any such privilege, doctrine, right or immunity.

If a Producing Party unintentionally or inadvertently discloses information that it believes is protected privileged or otherwise immune from discovery, the Party shall, within seven (7) business days upon discovery of the disclosure, so advise the Receiving Party in writing, request the information be returned.  If that request is made, no Party to this Litigation shall thereafter assert on this basis that the disclosure waived any privilege or immunity.  If a Receiving Party receives information that the Receiving Party believes may be subject to a claim of privilege or protection from discovery, the Receiving Party shall promptly identify the information to the Producing Party.

When a Producing Party or Receiving Party identifies such privileged or protected information, a Receiving Party: (1) shall not use, and shall immediately cease any prior use of, such information; (2) shall immediately take reasonable steps to retrieve the information from others to which the Receiving Party disclosed the information; (3) shall immediately, and not later than three (3) business days after receipt of the Producing Party's request, return to the Producing Party or destroy the information and destroy all copies thereof; and (4) shall confirm to the Producing Party the destruction under (3) above of all copies of the information not returned to the Producing Party.  No one shall use the fact or circumstances of production of the information in this Litigation to argue that any privilege or protection has been waived.  The cost, if any, for excising such documents or materials by the Receiving Party shall be borne by the Producing Party.  Notwithstanding this provision, no Party or its Outside Counsel of Record shall be required to return or destroy any information that may exist on any

1   disaster recovery backup system.

2        The Receiving Party may file a motion to compel the production of information identified by

3   the Producing Party as privileged or protected on the basis that: (a) the information was never

4   privileged or protected from disclosure; or (b) any applicable privilege or immunity has been waived

5   by some act other than the production of the information in this Litigation. Any such motion shall not

6   disclose or otherwise use the content of the inadvertently produced document or information (beyond

7   any information appearing on the privilege log) in any way. The parties expressly acknowledge that

8   documents which are inadvertently produced cannot be sequestered by a receiving party for submission

9   to the Court. Outside Counsel of Record for the Producing Party and Outside Counsel of Record for

10  the Receiving Party shall meet and confer in accordance with applicable law or Court rules regarding

11  any such motion to compel.

12       To the extent that any such inadvertently produced material has been used, included, referenced

13  or summarized in a pleading, deposition or other proceeding, nothing in this paragraph shall require a

14  Receiving Party to purge, redact or excise any such information that has been used in good faith before

15  a request for the return of the unintentionally produced material. Upon a request for return of the

16  inadvertently produced material, the Receiving Party shall refrain from any further use or

17  dissemination of the inadvertently produced material pending determination of the privilege status of

18  the inadvertently produced material pursuant to this Order and all applicable laws and rules.

19  **16.   PROCEDURE   REGARDING   HIPAA-PROTECTED   INFORMATION   AND
20         CONFIDENTIAL INFORMATION NOT RELEVANT TO THE LITIGATION**

21       This Order is intended to comply with the HIPAA requirements of 45 CFR § 164.512(e)(1)(v).

22  A Producing Party may redact information that constitutes, embodies, or reflects "protected health

23  information" under HIPAA from documents and material produced in this Litigation. A Producing

24  Party may move for leave to redact any trade secret (as that term is defined in 18 U.S.C. § 1839(3)

25  and/or the Uniform Trade Secret Act, Cal. Civ. Code § 3426.1) that is not relevant to the Litigation,

26  and it may lodge the documents in question with the Court for the Court's review *in camera*.

27  Alternatively, a Producing Party may produce such documents or material in unredacted form by

28  designating the document or material as "OUTSIDE ATTORNEYS' EYES ONLY INFORMATION"

    in accordance with the provisions of this Order, and the Receiving Party shall treat all such "protected

1   health information" accordingly.   If a Party uses Protected Material containing "protected health
2   information" in an expert report or at deposition, trial, or any motion or other presentation in or to the
3   Court, the Party using such Protected Material shall redact the "protected health information" from
4   such Protected Material.

5   **17.   MISCELLANEOUS**

6      17.1.      <u>Right to Further Relief</u>.  Nothing in this Order abridges the right of any person to seek
7   its modification by the court in the future.

8      17.2.      <u>Rights to Assert Other Objections</u>.  By stipulating to the entry of this Protective Order
9   no Party waives any right it otherwise would have to object to disclosing or producing any information
10  or item on any ground not addressed in this Stipulated Protective Order.  Similarly, no Party waives
11  any right to object on any ground to use in evidence of any of the material covered by this Protective
12  Order.

13     17.3.      <u>Filing Protected Material</u>.  In each of the Foreign Actions, the Party and its Outside
14  Counsel seeking to file and rely on Protected Material shall make all relevant requests to the Court,
15  including, if necessary, requests for filing under seal, protective orders, or for confidential proceedings,
16  to seek to maintain the confidentiality of information obtained pursuant to the Subpoenas, and the other
17  Parties, to the extent they are also a party to the relevant Foreign Action, shall cooperate in making any
18  such requests. However, should such requests be denied, nothing in this Order prohibits a Party from
19  filing Protected Material with a Court in one of the Foreign Actions unless the Court in the Foreign
20  Action orders that the Protected Material not be filed. Nothing in this paragraph requires the Party
21  seeking to file and rely on Protected Material to appeal the denial of such a request before filing the
22  Protected Material.

23     17.4.      Without written permission from the Designating Party or a court order secured after
24  appropriate notice to all interested persons, a Party may not file in the public record in the 1782
25  Proceeding any Protected Material.  A Party that seeks to file under seal any Protected Material in the
26  1782 Proceeding must comply with Civil Local Rule 79-5 and this Court's Standing Order on
27  Administrative Motions to File Under Seal. Protected Material may only be filed under seal pursuant
28  to a court order authorizing the sealing of the specific Protected Material at issue. Pursuant to Civil

1   Local Rule 79-5, a sealing order will issue only upon a request established that the Protected Material

2   at issue is privileged, protectable as a trade secret, or otherwise entitled to protection under the law. If

3   a Receiving Party's request to file Protected Material under seal pursuant to Civil Local Rule 79-5(e)

4   is denied by the Court, then the Receiving Party may file the Protected Material in the public record

5   pursuant to Civil Local Rule 79-5(e)(2) unless otherwise instructed by the Court.

6   **18.   FINAL DISPOSITION**

7         Within sixty (60) days after the final disposition of the Litigation, as defined in Section 4, each

8   Receiving Party must return all Protected Material to the Producing Party or destroy such material. As

9   used in this subdivision, "all Protected Material" includes all copies, abstracts, compilations,

10   summaries, and any other format reproducing or capturing any of the Protected Material.  Whether the

11   Protected Material is returned or destroyed, the Receiving Party must submit a written certification to

12   the Producing Party (and, if not the same person or entity, to the Designating Party) by the sixty (60)-

13   day deadline that (1) identifies (by category, where appropriate) all the Protected Material that was

14   returned or destroyed and (2) affirms that the Receiving Party has not retained any copies, abstracts,

15   compilations, summaries or any other format reproducing or capturing any of the Protected Material.

16   Notwithstanding this provision, Counsel are entitled to retain an archival copy of all pleadings, motion

17   papers, trial, deposition, and hearing transcripts, legal memoranda, correspondence, deposition and

18   trial exhibits, expert reports, attorney work product, and consultant and expert work product, even if

19   such materials contain Protected Material.  Any such archival copies that contain or constitute

20   Protected Material remain subject to this Protective Order as set forth in Section 4 (DURATION).

21   **19.   OTHER PROCEEDINGS**

22         The Protected Material governed by this Order may be used only in the Litigation, but not in

23   any other proceeding. By entering this Order and limiting the disclosure of information in this case,

24   the Court does not intend to preclude another court from finding that information may be relevant and

25   subject to disclosure in another case. Any person or Party subject to this Order who becomes subject

26   to a motion to disclose another Party's Protected Material pursuant to this Order shall promptly notify

27   that Party of the motion so that the Party may have an opportunity to appear and be heard on whether

28   that information should be disclosed, as noted above in Section 12.

1    **IT IS SO STIPULATED, THROUGH COUNSEL OF RECORD.**

2    Dated: August 6, 2020                     FOLKMAN LLC

3

4                                              By: */s/ Theodore J. Folkman*

5                                                  Theodore J. Folkman
                                                   Attorney for Applicant Illumina
6                                                  Cambridge Ltd

7    Dated: August 6, 2020                     WEIL GOTSHAL & MANGES LLP

8

9                                              By: */s/ Derek Walter*

10                                                 Edward R. Reines
                                                   Derek Walter
11                                                 Attorneys for Applicant Illumina
                                                   Cambridge Ltd
12

13   Dated: August 6, 2020                     HECHT PARTNERS LLP

14

15                                             By: */s/ Minyao Wang*

16                                                 Minyao Wang
                                                   Attorney for Applicant Illumina
17                                                 Cambridge Ltd

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Dated: August 6, 2020

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: /s/ Joseph Milowic, III
                 David Bilsker
                 Margaret Shyr
                 Anne S. Toker
                 Joseph Milowic, III
    Attorneys for BGI Americas Corp., MGI
                 Americas Inc., and
           Complete Genomics, Inc.

**IT IS SO ORDERED.**

Dated: August 12, 2020

United States Magistrate Judge
Thomas S. Hixson

**EXHIBIT A**

**ACKNOWLEDGEMENT OF PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ILLUMINA CAMBRIDGE LTD. | ) | Case No. 3 19-mc-80215-WHO (TSH) |
| Applicant | ) | |
| v. | ) | Judge: Hon. Thomas S Hixson. |
| COMPLETE GENOMICS, INC., *et al.* | ) | |
| Respondents | ) | |
| _____ | ) | |

I, _____, state that:

I have read and reviewed in its entirety the annexed Stipulated Protective Order ("Protective Order") that has been signed and entered in this matter.

I hereby agree to be bound by and comply with the terms of the Protective Order, and not to disseminate or disclose any information subject to the Protective Order that I review or about which I am told, to any person, entity, party, or agency for any reason, except in accordance with the terms of the Protective Order.

I understand that contempt sanctions may be entered for violation of this Protective Order and further agree to submit to the jurisdiction of this Court for the purposes of enforcement of the terms of this Protective Order.

DATED this _____ day of _____, 20____.

Signature:      _____

Typed/Printed Name:    _____

AMENDED STIPULATED PROTECTIVE ORDER       1       CASE NO.: 3: 19-mc-80215-WHO (TSH)

**EXHIBIT B**

**ACKNOWLEDGEMENT OF PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| ILLUMINA CAMBRIDGE LTD. | ) | Case No. 3: 19-mc-80215-WHO (TSH) |
| Applicant | ) | |
| v. | ) | Judge: Hon. Thomas H. Hixson. |
| COMPLETE GENOMICS., INC., *et al.* | ) | |
| Respondents | ) | |
| _____ | ) | |

1.    This agreement is made between:

_____ [NAME OF COUNSEL or CONSULTANT] and

_____ [NAME OF PARTICIPANT], residing at

_____ [ADDRESS OF PARTICIPANT].

2.    I understand that, in connection with the research project in which I am participating today, I may receive information that is confidential, and that I may not share or disclose that information with anyone (including members of my family) outside of this research group.

3.    I agree not to disclose any information I learn here today to anyone outside of this research group, or to not use such information in any way outside of my participation in this research project today.

4.    I agree that, at the end of the research project today, I will not keep or take with me any documents or other materials shown to me, or any notes or other records I may make about those documents or other materials shown to me today.

1

2          Signed: _____

3

4          Name: _____

5

6          Date: _____

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2