# Exhibit B

**FOLKMAN LLC**

Theodore J. Folkman
ted@folkman.law
+1 (617) 646-9980

BY EMAIL AND MAIL

October 21, 2020

Lucas Bento, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Ave., 22nd Floor
New York, NY 10010

    re:    *In re Application of Latvia MGI Tech SIA, et al., No. 20-80152*

Dear Lucas:

Pursuant to Fed. R. Civ. P. 45(d)(2)(B), I write to inform you of Illumina, Inc.'s objections to the subpoena served on October 7, 2020.

1.    *Lack of Reciprocity.* The Court has the power to condition discovery on § 1782 on "reciprocal information exchange." *Intel Corp. v. Advanced Micro Devices, Inc.,* 542 U.S. 241, 262 (2004). This rule exists to mitigate "[c]oncerns about maintaining parity among adversaries in litigation." *Id.* This case perfectly illustrates the need for reciprocity, and Illumina will assert, if necessary, that the Court should not permit the applicants to invoke § 1782 unless they are willing to provide discovery that Illumina and Illumina Cambridge have so far been unable to obtain.

Illumina Cambridge has brought actions against all of the applicants in foreign jurisdictions. That is the reason the applicants are "interested persons" entitled to apply for judicial assistance under § 1782. But none of the applicants, to the best of Illumina's knowledge, has any American presence or is "found" in the United States for purposes of the statute. That is the reason why Illumina did not seek discovery from them in the US patent infringement litigation and the reason why Illumina Cambridge did not invoke § 1782 to obtain discovery from them for use in the foreign lawsuits.

As you know, Illumina Cambridge did seek and obtain discovery from three BGI-related entities that *were* found in the United States, Complete Genomics, Inc. ("CGI"), BGI Americas Corp., and MGI Americas, Inc. But that discovery did not yield information from other BGI entities abroad. For example, Maria Hansen, designated to testify on the non-technical topics in the Rule 30(b)(6) deposition schedule, testified that she did not know what Latvia MGI Tech, SIA did, that she had never communicated with anyone from

Lucas Bento, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
October 21, 2020
Page 2

that company, and that she had no knowledge of the relationships between it and other BGI entities. (Hansen Dep. 40:10-42:19). Although documents suggested that Latvia handled servicing and spare parts for BGI customers in Europe, Ms. Hansen had no information on that topic. (Hansen Dep. 73:19-79:17). To take another example, ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (Hansen Dep. 160:19-161:6). To take yet another example, BGI Europe A/S is another applicant in these proceedings. Ms. Hansen had no knowledge of the countries where it did business or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ (Hansen Dep. 178:5-13). I note also that the US respondents have taken the position that while they may have been in possession of documents belonging to non-US BGI entities, they did not have control of those documents, could not vouch for their accuracy, and thus were not required to produce them. (E.g., Tr. of Feb. 13, 2020 at 4:5-11:21).

The single exception to the US respondents' refusal or inability to produce evidence in the possession of non-US BGI entities resulted from the Court's order that CGI, which was the corporate parent of MGI Tech at the time it first had notice of Illumina Cambridge's subpoena, was obligated to produce evidence in the possession of MGI Tech as of that date notwithstanding CGI's arguments that it lacked the power to produce such evidence. Nevertheless, Ms. Hansen testified that personnel of MGI Tech, one of the applicants here, would have more information than she had about service provided to end users in Switzerland. (Hansen Dep. 83:15-19). She also testified that MGI Tech personnel would be able to answer questions she could not about participation in trade shows, exhibitions, and similar events relevant to a patent infringement inquiry. (Hansen Dep. 83:23-84:3). And she testified she thought that the information from BGI's Oracle database that was provided in discovery was only provided for the "short period of time" when CGI was MGI Tech's corporate parent; she therefore was unsure whether shipments of allegedly infringing products that took place out of that time frame would have been shown in the documents produced in discovery. (Hansen Dep. 181:24:182-18).

I note that the subpoena calls for information concerning several more countries than Illumina Cambridge's subpoena addressed or was able to address. Illumina should have the opportunity to seek discovery relevant to those countries, and it has not had that opportunity to date.

Lucas Bento, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
October 21, 2020
Page 3

In these circumstances, Illumina believes that the Court should condition the discovery your clients wish to take on their agreement to provide reciprocal discovery, and Illumina objects to compliance with the subpoena unless your clients voluntarily agree to provide discovery or the Court orders it.

   2. *Circumvention—UK Proceedings*

Illumina objects to the subpoena to the extent it seeks documents for use in the UK proceedings. On March 16, 2020, only a week before the case management conference and about three weeks after Illumina had first sought to raise the issue of disclosure, lawyers for Latvia MGI Tech SIA and MGI Tech Co. Ltd. wrote to Illumina's UK lawyers stating that their clients would seek extended disclosure under English law. "Extended disclosure" may be sought by a party to an English patent lawsuit and is raised in the context of the parties seeking to agree to suitable directions to trial. This having been addressed, the court issues an order setting out the directions to trial, including deadlines for the exchange of evidence and, where necessary, the scope of disclosure. Given the late date of the letter—Illumina had previously requested notification by March 4, because the accelerated nature of the case would make it impossible to meet the requirements of English civil procedure with regard to disclosure—and given the lack of any specificity in the March 16 letter about the model of extended disclosure sought or about the pleading that your clients claimed substantiated their request, Illumina's lawyers objected to your clients' request for extended disclosure to be addressed at the case management conference. Given that it had been raised so late, it would have been impossible for the necessary procedural requirements to be fulfilled before the case management conference. Ultimately your clients did not seek extended disclosure, despite indicating that they would return to the issue after the case management conference. While it was open to them to do so, and for a disclosure guidance hearing to be convened if necessary, the issue of disclosure was not raised by your clients again.

Illumina believes that seeking production of documents already produced in the US litigation, as the subpoena in this case does, is an attempt to circumvent English proof-gathering restrictions, namely, the procedural requirements in Practice Direction 51U that your clients did not pursue.

Lucas Bento, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
October 21, 2020
Page 4

   3. *Undue Burden— EP '287 and EP '415*

Illumina objects to the subpoena's inclusion of the EP '287 and EP '415 patents in the definition of "Asserted Illumina Patents." Neither patent is related to the patents in suit for the US litigation. We understand that you have drafted both requests for production in the subpoena to require the production of documents that have been or are to be produced in the US proceedings, presumably to attempt to minimize the burden of searching for and reviewing documents. But because the US proceedings do not involve patents related to EP '287 and EP '415, it would be highly burdensome for Illumina to have to review the documents it produced in the US cases to determine whether any of the documents that are not otherwise responsive to the subpoena are responsive to the subpoena insofar as they relate to the EP '287 and EP '415 patents. Thus the cost of undertaking the review that would be required is disproportionate to the likely benefit.

   4. *Undue Burden—Confidentiality*

Illumina objects to the subpoena as unduly burdensome because it calls for the production of confidential information, but no protective order is in place. Illumina is willing to negotiate a protective order substantially similar to the order entered in Illumina Cambridge's § 1782 application, which provides reasonable protection for confidential material.

   5. *Nonexistent Documents.*

The subpoena calls for the production of documents that do not exist. In particular, Requests 1.e and 1.f calls for the transcripts of future depositions. The subpoena imposes no obligation to produce documents that do not exist, *see Insituform Techs. v. Cat Contr.,* 16 F.R.D. 630, 633 (N.D. Ill. 1996), and once Illumina complies with the subpoena (assuming the Court requires compliance), it will have no further obligations. The duty to supplement discovery responses exists only for "a party who has made a disclosure under Rule 26(a)—or who has responded to an interrogatory, request for production, or request for admission," Fed. R. Civ. P. 26(e)(1), not for a nonparty who has complied with a subpoena. *See Munive v. Town of Cicero,* 2016 U.S. Dist. LEXIS 182159, at *25 (N.D. Ill. Oct. 14, 2016); *Alexander v. FBI,* 192 F.R.D. 37, 38 (D.D.C. 2000). The reference in Instruction 14 to continuing obligations is objectionable for the same reason.

Lucas Bento, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
October 21, 2020
Page 5

6. *Overbreadth.*

The subpoena calls for the production of some documents, for example lab notebooks to the extent "reflecting, referring to, or relating to the conception and reduction to practice of the inventions claimed in the Asserted Illumina Patents," that may contain information that is relevant to conception and reduction to practice and other information that is irrelevant to conception and reduction to practice. Illumina objects to the subpoena to the extent it calls for production of such documents in their entirety rather than to the portions of the documents that contain the relevant information. These requests also implicate a concern about the confidentiality of trade secrets. As the Court indicated at the February 13, 2020 hearing on Illumina Cambridge's § 1782 application (Tr. 35:21-25), trade secrets that are relevant to issues in the case stand on a different footing than trade secrets in a document that is otherwise producible but that are irrelevant to the issues in the case. Illumina objects to the production, without redaction, of any document that contains a trade secret or other confidential information that is irrelevant to conception and reduction to practice.

7. *Objectionable Instructions.*

Certain instructions in the subpoena purport to impose obligations on Illumina greater than those imposed by Rule 45. In particular:

- There is no duty to inform your clients of the location of documents not within Illumina's possession, custody, or control (Instruction 2).
- There is no duty to state that Illumina is unaware of the existence of documents responsive to a particular request (Instruction 3).
- Instructions 6 and 7 refer to the requirements of Fed. R. Civ. P. 34(b)(2)(E), which are not found in Fed. R. Civ. P. 45 and are inapplicable here.
- Instruction 14 is improper for the reasons given above.

Lucas Bento, Esq.
Quinn Emanuel Urquhart & Sullivan, LLP
October 21, 2020
Page 6

I suggest we set a time to discuss these issues with the aim of resolving them and avoiding motion practice. Let's talk at your convenience about scheduling that discussion.

Sincerely,

Theodore J. Folkman